(No. 33745.—

AUGUST A. BAUER *et al.*, Appellees, *vs.* P. W. SAWYER *et al.*—(P. W. SAWYER, Appellant.)

*Opinion filed March 22, 1956—Rehearing denied May 22, 1956.*

WERNER W. SCHROEDER, of Chicago, EVA L. MINOR, and MAYNARD R. BISSONNETTE, both of Kankakee, for appellant.

BUTZ, BLANKE & STITH, of Kankakee, for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

All of the parties to this action are doctors. Prior to March 31, 1954, they were associated together in a medical partnership known as the Kankakee Clinic. On that date Dr. P. W. Sawyer, the principal defendant, withdrew from the partnership and in May of 1954 he opened offices for the practice of medicine and surgery in the city of Kankakee. Five of the eleven remaining partners instituted this action, alleging that the partnership agreement prohibited a retiring partner from practicing medicine in the city of Kankakee and seeking an injunction to restrain Dr. Sawyer from violating the agreement. The other six remaining partners were joined as defendants. They admitted the allegations of the complaint, but sought no relief against Dr. Sawyer. Dr. Sawyer also admitted the allegations of the complaint, but defended on the ground that the partnership agreement contemplated that a withdrawing partner had the alternative right to perform the agreement or to pay liquidated damages. The case was submitted upon the pleadings and a stipulation of facts. The circuit court entered a decree dismissing the complaint. The Appellate Court reversed, (6 Ill. App. 2d 178,) and we granted leave to appeal.

The partnership agreement provides that the interest of an individual partner may be terminated by retirement

based on physical incapacity, by voluntary withdrawal, or by expulsion for unprofessional conduct or for failure to carry out the provisions of the agreement. In each instance the remaining partners are to purchase the interest of the outgoing partner at a stated percentage of its value as shown on the partnership books: 100 per cent in case of retirement for incapacity, 80 per cent in case of voluntary withdrawal, and 75 per cent in case of expulsion. By the agreement each partner covenants that after the termination of his interest he will not engage in the practice of medicine, surgery or radiology within a radius of 25 miles of Kankakee for a period of five years. The agreement also provides that if the former partner violates this covenant, he shall forfeit any unpaid portion of the purchase price of his interest. In the case of a partner withdrawing voluntarily, one half the purchase price is payable 30 days after withdrawal and the other half is to be evidenced by notes payable in one year which are to be delivered to an escrow agent, who is directed to cancel the notes upon certification by the remaining partners that the former partner has resumed practice. At the time of his withdrawal from the firm Dr. Sawyer was paid 40 per cent of the value of his partnership interest, and a note for the remaining 40 per cent was turned over to an escrow agent in accordance with the agreement. ,

Although Dr. Sawyer admits that he resumed practice in Kankakee in violation of the contract, he contends that the contract ought not to be specifically enforced against him, (1) because it is an unreasonable restraint of trade and contrary to public policy, and (2) because it contains a provision for liquidated damages which bars specific enforcement.

The principles governing cases of this kind were stated in *Ryan v. Hamilton*, 205 Ill. 191, 197, in which a contract by a physician not to engage in practice in a specified community was enforced by injunction: "That contracts

in general restraint of trade are generally held to be illegal is beyond controversy. But the rule admits of well defined exceptions, and among the exceptions are contracts of the kind and character presented in this case. Contracts of this class, where the limitation as to territory is reasonable and there exists a legal consideration for the restraint, are valid and enforceable in equity, and in such cases relief by injunction is customary and proper." (See also *Storer* v. *Brock,* 351 Ill. 643; *Linn* v. *Sigsbee,* 67 Ill. 75.) In determining whether a restraint is reasonable it is necessary to consider whether enforcement will be injurious to the public or cause undue hardship to the promisor, and whether the restraint imposed is greater than is necessary to protect the promisee. *Hursen* v. *Gavin,* 162 Ill. 377; Restatement of the Law, Contracts, secs. 515, 516.

In this case the interest of the public is in having adequate medical protection, and it is of course true, as suggested by Dr. Sawyer, that if the injunction is granted the number of doctors available in the Kankakee community will be reduced. A stipulation entered into by the parties, however, shows that there are now 70 doctors serving the area. We are unable to say that the reduction of this number by one will cause such injury to the public as to justify us in refusing to enforce this contract. In any case, there is no reason why Dr. Sawyer cannot serve the public interest equally well by practicing in another community. No special hardship to Dr. Sawyer appears which would justify the denial of relief in this case. He may resume practice in Kankakee after five years and in the meantime he may practice elsewhere. The territorial limitation to the city of Kankakee and the surrounding area is not, we think, unreasonable in the light of modern methods of transportation and communication. (*Granger* v. *Craven,* 159 Minn. 296, 52 A.L.R. 1356.) Agreements unlimited in time have heretofore been enforced, (*Storer* v. *Brock,* 351 Ill. 643; *Ryan* v. *Hamilton,* 205 Ill. 191;

*Linn* v. *Sigsbee,* 67 Ill. 75,) although other authorities hold that the restraint must be limited in time as well as space. (*Hursen* v. *Gavin,* 162 Ill. 377; *Lewis* v. *Krueger, Hutchison & Overton Clinic,* 153 Tex. 363, 269 S.W.2d 798; *Brecker* v. *Brown,* 235 Iowa, 627, 17 N.W.2d 377.) We need not here consider whether a time limitation is essential, because in any event the present five-year period does not appear unreasonable. *Shaleen* v. *Stratte,* 188 Minn. 219, 246 N.W. 744.

It thus appears that the agreement is not contrary to public policy by the tests that have heretofore been employed. Dr. Sawyer contends, however, that the prior cases decided by this and other courts are distinguishable because they involved either the sale of an established practice or the taking of a newcomer into an established practice, as employee or partner. Pointing out that in this case there was no express sale of the practice of any of the partners, and each of the partners was a practicing physician when the agreement was entered into, he argues that "If there is no established practice sold and no newcomer as a potential usurper, there is no need for the restraint being enforced by injunction."

With this contention we do not agree. No case is cited which holds that the members of a partnership may not by their agreement reasonably protect themselves against the competition of an outgoing partner. Indeed such agreements are classic illustrations of reasonable restraints of trade. "A legitimate method of enhancing the good will of continuing partners in professional, as well as commercial, partnerships is to secure forbearance from competition by a retired partner. He may agree not to compete, within reasonable limits as to time and space, and such an undertaking will be enforced by injunction." (Crane on Partnerships, sec. 84.) "The contract of a partner not to compete with the partnership either directly or indirectly is not opposed to public policy; but such an agreement must

be ancillary to the relation or contract of partnership or to a contract by which a partner disposes of his interest." (5 Williston on Contracts, sec. 1644; Restatement of the Law, Contracts, sec. 516, comment (f).) Our own decision in *Storer* v. *Brock*, 351 Ill. 643, enforced an agreement, entered into between two doctors upon the dissolution of their partnership, which restricted the future practice of the retiring partner. The distinction attempted to be drawn is without merit.

The most significant of the two remaining contentions of the defendant relates to the effect of the forfeiture clause. Under the partnership agreement the purchase price to be paid to an outgoing partner is payable in equal annual installments. In the event of a retirement for incapacity, there is one installment; if there is voluntary withdrawal, as in this case, there are two installments, and in the case of an ouster there are three installments. The first installment is payable thirty days after the withdrawal and notes are issued for the other installments. Interest is payable on the outstanding balance, and the partners have the privilege of prepayment. The notes are to be deposited with an escrow agent, who is directed to deliver them to the outgoing partner on the due date, unless the remaining partners have certified that the outgoing partner has breached the conditions of the agreement limiting his subsequent practice of medicine. If the remaining partners make such a certification, the agreement provides that the "escrow agent shall turn over and deliver the remaining unpaid notes to the makers thereof for cancellation, it being the intention of the parties hereto that the retiring or withdrawing Partner who has breached the [said] provisions * * *, shall thereby forfeit a portion of the value of his Partnership interest."

Dr. Sawyer claims that the contract gave him the option to resume practice by giving up the unpaid portion of the value of his partnership interest, in this case $7451, which

he characterizes as liquidated damages. Of course an agreement may be so formulated as to give an option to perform the contract or pay the stipulated damages. That was the case in *Davis* v. *Eisenstein,* 257 Ill. 260, where the agreement provided that "Upon payment thereof [of the stipulated liquidated damages] this contract is to become null and void." That agreement was held to give an option to each party to perform the contract or to pay the stipulated damages. There is no similar language in the present contract. On the contrary, the entire agreement indicates the intention of the parties that the covenant restricting the future activities of a former partner was intended to be enforced.

Upon the assumption that the provision contemplates liquidated damages, it is also argued that the existence of the liquidated damage clause bars the issuance of an injunction, and in support of the argument, *Bartholomae & Roesing Brewing and Malting Co.* v. *Modzelewski,* 269 Ill. 539, 547, is relied upon. That case was decided upon many grounds. Its statements to the effect that a provision for liquidated damages operates as a bar to an injunction have been sharply criticized. (Britton, Injunction to Restrain Breach of Negative Covenants, 1 Ill. Law Bulletin 56; Pomeroy, Specific Performance of Contracts in Illinois, 1 Ill. Law Bulletin 117.) In accordance with our earlier and later decisions and with the weight of authority elsewhere, (*Lyman* v. *Gedney,* 114 Ill. 388; *Koch* v. *Streuter,* 218 Ill. 546; *Gronowski* v. *Jozefowicz,* 291 Ill. 266, 275; *Mackie* v. *Schoenstadt,* 307 Ill. 398; see Restatement of the Law, Contracts, sec. 378,) we hold that even if the provision in question is construed as one for liquidated damages the right to an injunction is not barred. To the extent that the *Modzelewski case* may be thought to hold otherwise, it is overruled.

While this case was under advisement in the Appellate Court, the continuing partners, including the plaintiffs, certified to the escrow agent that the condition as to subse-

quent practice had been breached by Dr. Sawyer. Under the agreement the escrow agent was required to return the notes to the makers for cancellation. Dr. Sawyer contends that liquidated damages have been collected, and that it would therefore be inequitable to enforce performance of the agreement by injunction. Plaintiffs argue that their certification was made with the thought that the clause was a penalty, and that the certification so stated. They say that the penalty cannot be enforced in its face amount and that they are still liable to Dr. Sawyer for $7451, the amount of the notes, less such actual damages as may have been sustained by the partnership.

"An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless (a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and (b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation." Restatement of the Law, Contracts, sec. 339, subsection (1).

In the present case it is not disputed that damages are difficult to ascertain. Indeed, plaintiffs' complaint so alleges. The more difficult question is whether the parties intended to forecast and fix the probable damages which would result from a breach. We think that they did not, and that they intended the clause as an additional sanction, by way of penalty, to enforce performance of the covenant not to re-engage in practice. In determining intent the language used by the parties is significant. Here, the parties speak not in the language of damages, but in terms of forfeiture. Although it is not controlling, the use of the word "forfeit" tends to exclude the idea of liquidated damages. (*Steer* v. *Brown,* 106 Ill. App. 361, 365.) So, too, the method of payment suggests that the purpose of the parties was to secure performance rather than to settle damages. The money is withheld, in this instance for a year, in the case

of an excluded partner for two years. If settlement of damages alone had been intended, it would have been sufficient to have provided for initial payment of the value of the partnership interest, and for subsequent recovery of the stipulated amount of damages in the event of breach.

There are other indications that the purpose of the clause was not to fix the amount of damages. Although the covenant not to re-engage in practice runs for five years, the clause in question covers only one year in the case of a withdrawing partner and only two years in the case of an expelled partner. No satisfactory reason explains why the provision, if it is for liquidated damages, does not cover the entire period of the restraint. Nor, assuming that the clause is a liquidated damage provision, is there any satisfactory explanation of what is to happen if a breach occurs after the escrow agent has delivered the notes to the outgoing partner. It can hardly be assumed that no damages at all were intended. The suggestion of defendant that the plaintiffs would then be entitled to an injunction, or to actual damages, as assessed by a court or jury, has no support in the language of the clause.

Nor does the clause fulfill the requirement that the amount of damages fixed be a reasonable forecast of just compensation for the harm caused by the breach. The defendant suggests that a percentage of the value of the partnership interest is probably as good a measure of damages as any test which could be devised by a court or jury. Assuming that, no reason appears for the discrimination between withdrawing and expelled partners. If a breach occurs during the first year, an expelled partner loses 50 per cent of the value of his interest in the partnership, while a withdrawing partner loses only 40 per cent. If a breach occurs during the second year an expelled partner would lose 25 per cent, while a withdrawing partner would presumably be liable for actual damages, whether they were greater or less than 25 per cent of the value of his interest.

These differences seem to us impossible to explain on the assumption that the clause was intended as a forecast of just compensation for the harm caused by a breach. The reason for this discrimination does not appear to be that there would be greater damage in the case of a breach by an expelled partner, but rather that there was thought to be greater likelihood of a breach. Accordingly, more stringent sanctions to secure performance were inserted.

Defendant Sawyer argues that the failure to provide damages for a breach occurring in the second and following years, in the case of a withdrawing partner, may be explained on the ground that a physician's goodwill would be largely lost if he remained out of practice for a year, and damages in that situation would be negligible. But even if we assume that a withdrawing physician's goodwill is as perishable as defendant suggests, we are unable to understand why an expelled physician's goodwill would last longer.

We conclude that the provision is a penalty and that the partners therefore remain liable to Dr. Sawyer in the amount of the outstanding unpaid balance. Plaintiffs' conduct was not, we think, inequitable or inconsistent with their theory of recovery and does not bar injunctive relief. The issuance of an injunction need not await the assessment of interim damages and the determination of a net balance.

Dr. Sawyer's final contention is that the Appellate Court lacked jurisdiction to reverse the trial court, because the trial court was composed of three judges and therefore lacked jurisdiction to enter a valid final judgment. The record shows that because of the importance of the questions presented by this case the three judges of the Twelfth Judicial Circuit decided to hear the case *en banc*. We are of the opinion that if there was error in the organization of the court, it was waived by the defendant's failure to raise the objection in the trial court. *People* v. *Link,* 365

Ill. 266; *People ex rel. McCollum* v. *Board of Education,* 396 Ill. 14.

The judgment of the Appellate Court, reversing the decree of the trial court and remanding the cause with directions to issue the injunction, is affirmed, with further directions to proceed in accordance with the views expressed herein.

*Judgment affirmed.*