Bruce H. Canfield, Gordon W. Wormley, Mathias F. F. Kohl, Ida M. Brechtel, John L. Bacon, Joseph P. Berger, Miller L. Henderson, John W. Seidlin, Robert Miranda-Norris, Norris R. Dougherty, and Herbert P. Lash, d/b/a Canfield Clinic, a Partnership, Plaintiffs-Appellees, v. Victor I. Spear, Defendant-Appellant.

Gen. No. 67–168.

Second District.

September 23, 1968.

Rehearing denied October 14, 1968.

Roszkowski and Paddock, of Rockford, and Barry L. Kroll, of Park Forest, for appellant.

Leonard C. Remencius, and Raphael E. Yalden, of Rockford, for appellees.

MR. PRESIDING JUSTICE ABRAHAMSON delivered the opinion of the court.

This is an appeal from the Circuit Court of Winnebago County. The court issued an injunction enjoining Victor I. Spear, defendant, from engaging in the practice of

medicine within a radius of 25 miles from the City of Rockford for a period of three years from June 30, 1967.

The plaintiffs are 11 medical doctors associated together in a partnership known as the Canfield Clinic, having their place of business in Rockford, Illinois. None of the plaintiffs engage in the practice of dermatology as a specialty. Victor I. Spear is a 32-year-old doctor of medicine who is a Board Certified dermatologist and who limits his practice to this specialty. In May of 1965 plaintiffs brought defendant to Rockford and the parties entered into a one-year employment contract. At the end of that year a second, 15-year contract was entered into. In this contract, like the first, defendant was guaranteed a minimum yearly income as against a percentage of his billings. The contract also provided that it could be terminated by the defendant giving to plaintiffs one year's written notice of his desire to terminate. The contract also provided:

> "The associate does hereby agree that, in the event of voluntary or involuntary withdrawal from this association, he will not re-engage in the practice of medicine within three (3) years after the termination of the association with the partnership within the City of Rockford or within a radius of twenty-five (25) miles thereof."

On November 11, 1966, defendant gave notice to certain of the plaintiffs of his resignation from the Canfield Clinic and requested that he be permitted to withdraw as of July 1, 1967. Plaintiffs offered defendant a partnership which he rejected. Plaintiffs thereupon notified defendant that he might withdraw as of July 1, 1967, but admonished defendant that they would enforce the above set forth restrictive covenant.

Dr. Spear admitted the validity of the contract. He contends that the restrictive covenant clause is unenforceable because of the removal of him, only one of four

108

dermatologists in Winnebago County, from the community would have an adverse effect upon the public and upon him personally. He also asserted that the clinic could show no irreparable damage. Dr. Spear had never engaged in the private practice of medicine before joining Canfield Clinic in June of 1965. His first contract with the clinic provided for a minimum guarantee of $16,000 as against 45% of his billings. The first year he treated some 3,018 patients, the greater percentage of which were patients of the clinic, and had gross billings of $25,169.75. The business manager of the clinic testified that overhead averaged 50% of billings.

In June of 1966, Dr. Spear signed the 15-year contract guaranteeing him a minimum of $18,000 the first two years as against 45% of his billings, and if his billings exceeded a certain percentage he was to receive 50% of his gross billings as his compensation. During the 13 months immediately prior to his leaving the clinic, Dr. Spear had gross billings of $51,769.50, so that he earned for that period $23,081.32.

Prior to his original negotiations with the clinic, Dr. Spear had never heard of the City of Rockford, Illinois. During his negotiations, the partners told him of their plans to construct a new building to house the clinic. Within six months after signing his second contract, Dr. Spear notified two of the partners of his intention to leave the clinic and gave as his reason the fact that their building plans had been unavoidably delayed. Dr. Spear stated that he felt this delay presented a serious obstacle to his growth at a very crucial time in his practice.

Plaintiffs rely heavily upon such cases as Hicklin v. O'Brien, 11 Ill App2d 541, 138 NE2d 47, wherein a lawyer, after selling his practice in Winnebago County, was enjoined from practicing in competition with the purchaser in that county for a reasonable period, and Bauer v. Sawyer, 8 Ill2d 351, 134 NE2d 329, wherein defendant, a partner in a medical practice, agreed not to

practice within Kankakee for a period of five years upon his withdrawal from the partnership and upon his withdrawal the court enforced the restrictive covenant contained in the partnership agreement. Other cases in which the court has enforced a restrictive covenant are Hursen v. Gavin, 162 Ill 377, 44 NE 735, Ryan v. Hamilton, 205 Ill 191, 68 NE 781, and Storer v. Brock, 351 Ill 643, 184 NE 868.

There is in our opinion a very fundamental difference between that line of cases and the one before us. In each of those cases the promisor was in direct competition with the promisee. In each of those cases a definable consideration was given for the promise not to compete. The restrictive covenant was at the root of the basic agreement between the parties. In the case before us the Canfield Clinic did not bring Dr. Spear to Rockford only because he agreed not to compete should he withdraw from the clinic. They brought him to Rockford because, in order to more fully develop their clinic, they needed a specialist in dermatology. None of the partners in the clinic are dermatologists and Dr. Spear is not in competition with them when he limits his practice to the treatment of diseases of the skin. To permit Dr. Spear to practice in Rockford would leave the plaintiffs no worse off than had Dr. Spear on his own initiative decided to establish a practice in Rockford. They have not, as the trial court found, lost a dermatologist, for they are free to bring in another dermatologist as an associate or partner. They have not lost the earnings of Dr. Spear, as the trial court found, as these were earnings from the practice of a specialty that none of them are qualified to engage in. We find no reasonable interest of plaintiffs to be protected by such drastic relief as to prevent a man from practicing his profession in a community in which he has become known and respected.

In addition to the effect upon the immediate parties we must consider the effect of enforcing this restrictive

110

covenant upon the general public. In Bauer v. Sawyer, supra, the injunction issued against a doctor who was only one general practitioner out of 70 practicing in the Kankakee area. Dr. Spear is one of only four specialists in dermatology in Winnebago County. The facts in the record demonstrate that Winnebago County has fewer dermatologists per capita than all but one comparable Illinois community. To remove Dr. Spear from Winnebago County would result in Rockford having less dermatologists per capita than any other Illinois area. Of the three other dermatologists practicing in Rockford one is in his sixties and the other two in their fifties.

It would unduly lengthen this decision to recite the rationales of such cases as House of Vision v. Hiyane, 37 Ill2d 32, 225 NE2d 21, Professional Business Management v. Clark, 83 Ill App2d 236, 227 NE2d 371, Vander Werf v. Zunica Realty Co., 59 Ill App2d 173, 208 NE2d 74, all of which have struck down restrictive covenants where the evidence showed that enforcement of the restriction would be injurious to the public or cause undue hardship to the promisor or be greater than was necessary to protect the promisee.

We do not feel it necessary to recite the detailed testimony that Rockford and Winnebago County are growing areas and that there is a decided shortage of medical talent to serve the residents. Dr. Joseph Perez, president of the medical staff of St. Anthony Hospital in Rockford, testified that until Dr. Spear became a member of their staff, they had not had a dermatologist on the staff for over 10 years. He also testified that the doctors engaged in conferences, which he termed "Grand Rounds" wherein various physicians would lecture to other physicians on subjects of particular interest and that until Dr. Spear joined their group, they had had no lectures presented by a dermatologist.

In applying the test which we find had been applied in cases similar to this, we believe the evidence clearly

indicates that enforcement of this covenant would be injurious to the welfare of the public by denying them a very needed service. Further, we are not of the opinion that to permit Dr. Spear to practice his specialty in Rockford will cause any specific injury to the remaining partners in the clinic. None of them specialized in dermatology and Dr. Spear would not be in direct competition either with the services that each of the partners renders individually to his patients or to the services the clinic renders collectively to the community.

For the reasons above stated, we are of the opinion that the restrictive covenant in the contract between plaintiffs and defendant is void and unenforceable.

Judgment reversed.

MORAN, J. and SEIDENFELD, JJ., concur.