TYLER ENTERPRISES OF ELWOOD, INC., Plaintiff-Appellee, v. WARREN C. SHAFER *et al.*, Defendants-Appellants.

Third District No. 3—91—0180

Opinion filed June 12, 1991.

Connolly, Ekl & Williams, P.C., of Clarendon Hills (Patrick J. Williams, of counsel), for appellants.

Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet (Kenneth A. Carlson and Roger D. Rickmon, of counsel), for appellee.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Plaintiff, Tyler Enterprises of Elwood (Tyler), brought an action in the circuit court of Will County against the defendants, Warren Shafer, James Lutz, and Shafer Enterprises. Tyler sought injunctive relief and damages from the defendants based on the following theories: (1) breach of a restrictive covenant; (2) tortious interference with business relations; (3) breach of fiduciary duty; and (4) defamation. The trial court granted the preliminary injunction and the defendants' petition for this interlocutory appeal pursuant to Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307(a)(1)).

Tyler develops, markets, and sells various fertilizers and lawn care products. In early 1980, Tyler hired Shafer as its general sales manager. Shafer's responsibilities included the development and production of products, advertising, the creation of a sales force, management of personnel, building a market base, customer relations, financial matters, and he was responsible for the day-to-day operations of the business. Lutz was hired by Tyler in 1984 as a sales representative.

A short time after beginning to work for Tyler, Shafer executed a stock option agreement which provided him with an option to pur-

chase 200 shares of Tyler stock. The agreement also contained a restrictive covenant, which provides:

> "4. As an inducement to the CORPORATION to enter into this Stock Option Agreement, SHAFER shall not for a period of three (3) years after his voluntary termination of employment with the CORPORATION or after the termination of his employment by the CORPORATION for cause, directly or indirectly, own, manage, operate, join, control or participate in the ownership, management, operation, or control of, or be employed or otherwise connected in any manner, with any business which directly or indirectly competes with the business of the CORPORATION within a radius of fifty (50) miles of Elwood, Illinois."

In November 1988, while still employed by Tyler, Shafer and Lutz, along with Mark Remke, created a corporation known as Remke Enterprises (Remke). Shafer, Lutz, and Mark Remke each owned 33⅓% of Remke. Remke was created to market fertilizers to nurseries, garden centers, and landscapers. At no time after creating Remke did Shafer or Lutz ever advise Jim Tyler, the president of Tyler, or any of the officers of Tyler of their ownership interest in Remke.

Shortly thereafter, an audit of Tyler uncovered Shafer's dealings with Remke. A meeting was held at which Jim Tyler told Shafer and Lutz to cease all involvement with Remke and that they were to devote full time to Tyler. Shafer also was to provide an accounting for all of his dealings with Remke. As it turns out, Shafer never provided the accounting. On August 31, 1990, Tyler terminated Shafer's employment.

On September 5, 1990, Shafer was given notice of Tyler's intent to enforce the restrictive covenant. In spite of this, Shafer continued to organize his own fertilizer/lawn care products company, Shafer Enterprises, and continued soliciting the salesmen, material suppliers, and customers of Tyler. Tyler subsequently filed the instant action.

The trial court granted Tyler's motion for an injunction restraining Shafer from violating the terms of the stock option agreement. This interlocutory appeal followed.

■ ■ A preliminary injunction is an extraordinary remedy used only in situations where an extreme emergency exists and serious harm would result in the absence of the injunction. (*Carbonic Fire Extinguishers, Inc. v. Heath* (1989), 190 Ill. App. 3d 948, 547 N.E.2d 675.) The decision to grant or deny injunctive relief rests within the sound discretion of the trial court. (*Southern Illinois Medical Business Associates v. Camillo* (1989), 190 Ill. App. 3d 664, 546 N.E.2d

1059.) In order for a preliminary injunction to issue, the plaintiff must establish that: (1) he possesses a clear right or interest needing protection; (2) no adequate remedy at law exists; (3) irreparable harm will result if an injunction is not granted; and (4) there is likelihood of success on the merits of the case. *Southern Illinois*, 190 Ill. App. 3d 664, 546 N.E.2d 1059.

■ We find that under these circumstances the trial court did not abuse its discretion in determining that Tyler had met its burden of proof, and in granting the preliminary injunction.

■ The propriety of injunctive relief in the instant case depends upon the enforceability of the restrictive covenant contained in the stock option agreement signed by Shafer, and that determination is a question of law. (*Reinhardt Printing Co. v. Feld* (1986), 142 Ill. App. 3d 9, 490 N.E.2d 1302.) Covenants not to compete are, in effect, restraints on trade and will be carefully scrutinized to ensure that their intended effect is not to prevent competition *per se*. (*Capsonic Group v. Swick* (1989), 181 Ill. App. 3d 988, 537 N.E.2d 1378.) A restrictive covenant may be held enforceable only if the time and territorial limitations are reasonably necessary to protect a legitimate business interest of the employer, a determination which necessarily turns on the facts and circumstances of each case. *Southern Illinois*, 190 Ill. App. 3d at 672, 546 N.E.2d at 1059.

■ There are two general situations in which an employer's legitimate business interests may be found for purposes of enforcing a covenant not to compete: (1) where, by the nature of the business, plaintiff has a near-permanent relationship with its customers and but for his employment, defendant would not have had contact with them; or (2) where the former employee learned trade secrets or acquired other confidential information through his employment with plaintiff and subsequently attempted to use it for his own benefit. (*Shapiro v. Regent Printing Co.* (1989), 192 Ill. App. 3d 1005, 549 N.E.2d 793.) In the instant case, the record shows that Tyler had a protectable business interest due to the near-permanent relationship it had with its customers.

■ Under Illinois law, a court may consider many objective factors when determining whether a near-permanent relationship exists between an employer and its customers. The number of years it takes the employer to develop the clientele indicates the parties' intention to remain affiliated with the employer indefinitely. (*McRand, Inc. v. van Beelen* (1985), 138 Ill. App. 3d 1045, 486 N.E.2d 1306.) In the instant case, Shafer testified that in the fertilizer/lawn care products industry, it is particularly important to cultivate the loyalty of the cus-

tomers. According to Shafer, Tyler's customers were developed over a 10-year period and not merely by the ring of a doorbell. Shafer also testified that his contact with the customers was a direct result of his association with Tyler.

Further, in a highly competitive business, personal customer contact by the employee is important in maintaining customer relationships. (*Donald McElroy, Inc. v. Delaney* (1979), 72 Ill. App. 3d 285, 389 N.E.2d 1300.) In the instant case, Shafer worked closely with the customers. Because of this extensive customer contact, Shafer received invaluable information including the knowledge of the customer's individualized needs. As a matter of policy, Tyler put a premium on developing extremely close working relationships between its employees, like Shafer and Lutz, and its customers. In order to foster the relationship between itself and its customers, Tyler offered technical support services in order to tailor the products to the particular needs of its customers.

In addition, after Shafer's employment was terminated by Tyler, Shafer held numerous meetings with Tyler's present and former salesmen in order to induce them into joining his company. Shafer did this because he needed not only a sales force to compete, but, more importantly, a sales force that had cultivated a clientele in the particular business that could bring its established clientele to Shafer's new venture. In fact, Shafer succeeded in luring nearly all of Tyler's salesmen to his company. This is further evidence that Tyler enjoyed a near-permanent and unique relationship with its customers.

The interest of the employer that needs to be protected here is the interest the employer has in his customers. More specifically, it is the interest the employer has in preventing an employee, like Shafer, from taking over its customers through the contacts that he has made with those customers while working for the employer. See *House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 225 N.E.2d 21.

A showing of irreparable harm is related to proof of a protectable interest. (*Morrison Metalweld Process Corp. v. Valent* (1981), 97 Ill. App. 3d 373, 422 N.E.2d 1034.) In the instant case, by directly competing against Tyler, Shafer is injuring his former employer and its established customer relations. Shafer's position as former head of Tyler's sales representatives gives him an enormous advantage in his attempt to lure away Tyler's customer base after it had spent 10 years cultivating their loyalty and trust. Given Tyler's protectable interest in the clientele with which it had established long-term individual relationships, irreparable injury caused by Shafer's establishment of a competing business to solicit and serve Tyler clients is presumed.

See *McRand, Inc. v. van Beelen* (1985), 138 Ill. App. 3d 1045, 486 N.E.2d 1306.

The trial court also found that Tyler established irreparable injury and that it did not have an adequate remedy at law to resort to. The record here shows that while still employed by Tyler, Shafer established a corporation (Remke) that competed with Tyler. Shafer owns a one-third interest in Remke from which he received royalties. Shafer later solicited Tyler's customers and employees thereby creating a situation threatening great and immediate harm to Tyler.

■ These actions are in direct violation of the language of the restrictive covenant. The above facts show that Shafer has violated the agreement's prohibition against "being employed or *** connected in any manner with a business which directly or indirectly competes with Tyler." Thus, an irreparable injury does exist and Tyler does not have an adequate remedy at law.

■ Finally, Tyler had to prove a likelihood of success on the merits. It is not necessary that Tyler's proof at this stage be incontrovertible or complete in every detail. The issuance of the injunction does not determine the ultimate rights of the parties nor does it finally decide the merits of the case. All that is necessary is that Tyler raise a fair question as to the existence of the right claimed and lead the court to believe it probably will be entitled to the relief prayed for if the proof should sustain its allegations. (See *Office Electronics, Inc. v. Grafic Forms, Inc.* (1978), 56 Ill. App. 3d 395, 372 N.E.2d 125.) The record shows a great likelihood that Shafer will succeed on the theories set forth in his complaint. We determine, therefore, that Tyler has presented sufficient evidence to establish a reasonable likelihood of success on the merits of the controversy.

For the foregoing reasons, we affirm the judgment of the circuit court of Will County granting a preliminary injunction against the defendant Shafer.

Affirmed.

BARRY and HAASE, JJ., concur.