HAMER HOLDING GROUP, INC.,[1] *et al.*, Plaintiffs-Appellants, v. STEPHEN C. ELMORE, Defendant-Appellee.

First District (2nd Division)   No. 1—92—2337

■■■■■

Opinion filed March 16, 1993.

■■■■■■■■■■■■

---

[1]After sorting through the various transfers of assets and corporate name changes which occurred prior to this suit as well as factoring in the trial court's dismissal of two of the original plaintiffs, we discovered in *Hamer I* that the sole remaining and proper plaintiff was First United Property Management, Inc., which we referred to as "First United II." (*Hamer Holding Group, Inc. v. Elmore* (1990), 202 Ill. App. 3d 994, 1003 n.4, 560 N.E.2d 907, 913 n.4, *appeal denied* (1991), 136 Ill. 2d 544, 567 N.E.2d 331.) First United II remains the only plaintiff on remand.

Marshall N. Dickler, Ltd., of Arlington Heights (Shelley R.Z. Barnett and Marshall N. Dickler, of counsel), for appellants.

Nisen & Elliott, of Chicago (Michael J. Daley, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff appeals, pursuant to Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307(a)(1)), from the circuit court's denial of a preliminary injunction after remandment of the cause by this court in a previous appeal. (*Hamer Holding Group, Inc. v. Elmore* (1990), 202 Ill. App. 3d 994, 560 N.E.2d 907 (hereinafter *Hamer I*).) In *Hamer I*, we remanded the action for a determination of the scope of plaintiff's business at the time defendant left its employ and whether, based on that finding, defendant's covenant not to compete, the enforceability of which was the core issue in *Hamer I*, as it is here, unreasonably restrained his activity in that business.

On remand, the trial court first found that when defendant voluntarily terminated his employment relationship on March 1, 1988, plaintiff was engaged in the real estate management business for condominium and homeowner associations. As to the second aspect of this court's mandate, the court ultimately denied plaintiff's injunction, believing that to issue it would be merely "vindictive."

Plaintiff appeals, asserting multiple grounds which can be summarized to include: (1) The trial court generally erred by failing to issue the injunction; (2) the court erred when it determined that the scope of plaintiff's business included only management services offered solely to condominium and homeowner associations; (3) the court violated this court's mandate on remand by considering matters beyond the record on appeal; and (4) the court erred by balancing the equities when this court's mandate did not authorize it.

In 1979, AMCO Realty and Management Company was incorporated in Illinois for the purpose of providing management services to condominium and homeowner associations. Defendant Stephen Elmore was its sole shareholder and served as its chief executive officer. On March 15, 1984, Elmore, in his capacity as CEO of AMCO, entered into a contract with First Eagle Holding Company, Inc. (First Eagle), wherein AMCO agreed to convey to First Eagle all of its corporate assets, including its good will.

In order to ensure the value of the good will, paragraph 3 of the sales contract, which was made a condition precedent to the contract, obligated Elmore to enter into an employment contract with First Ea-

gle prior to the closing date, March 30, 1984, a condition he satisfied in a timely manner. On March 26, 1984, First Eagle, as permitted by the sales contract, assigned to a subsidiary, First United ICI, Inc. (First United I), its right to purchase AMCO including Elmore's now-executed employment contract.

Under the employment agreement, Elmore would be "responsible for management services rendered to condominiums and cooperative associations and rental apartment units"; the term of the agreement was to be one year; and in return, Elmore would receive $2,000 a month as compensation. It also contained the covenant not to compete referred to above, which stated:

"7. *Covenant Not to Compete*

Employee agrees that during the term of this Agreement he will not directly or indirectly consult with, or render services for or in any manner engage in a business competing with the business of Employer anywhere within a seventy-five (75) mile radius of Monroe and Dearborn, Chicago, Illinois (Restricted Area). Employee further agrees that for a period of three (3) years following the termination of his employment with Employer he will not directly or indirectly consult with or render services for clients of Employer whether or not such clients became clients of Employer through the efforts made by or on behalf of Employee or in any manner engage in a business competing with the business of Employer anywhere in the Restricted Area.

Employee agrees that during the term of this Agreement and for a period of three (3) years following the termination of his employment with Employer, he shall not consult with, render services for or in any manner engage in a business competing with the business of Employer within the Restricted Area with regard to any person, persons or companies that had been contacted by Employee for the purposes of securing such parties as clients of Employer. In the case of termination, such covenant for such three year period following termination shall be with regard to all such parties contacted by Employee or on behalf of Employer by Employee during the 12 month period preceding termination."

After First United I's acquisition of AMCO, it assumed the responsibility of acting as the manager for the condominium associations of AMCO's former clients. It also served as manager of townhouse associations and oversaw a few parcels of commercial properties as well. Elmore served as CEO of First United I, a posi-

tion he occupied until he decided to end his relationship with it on March 1, 1988. Subsequently, on October 31, 1988, First United I sold its assets including Elmore's employment agreement to Studio 2, Inc., the remaining plaintiff in this action and now designated First United Property Management, Inc. ("First United II"). First United II's president and CEO, Mark Maute, had worked under Elmore at AMCO. While Maute was negotiating to purchase the assets of First United I, Elmore's attorney contacted him and sought a release of his client from the covenant. Elmore also contacted Maute and admitted that he wanted once again to service properties he had managed while at AMCO, which properties implicated the covenant as they were well within its 75-mile geographic scope.

In November 1988, only six months into the three-year time frame of the covenant, Elmore contacted his former clients, offering them his managerial services. When Maute learned of Elmore's overtures to former clients, he telephoned Elmore and, during their conversation, Elmore cautioned Maute that if he was not released from the covenant, he "was prepared to go down in flames and take everyone else with him." He also threatened to spread false rumors to his former clients concerning First United II's ability to manage properties.

Immediately thereafter, First United II brought this action seeking, *inter alia*, preliminary and permanent injunctive relief to enjoin Elmore from violating his covenant not to compete. The court held evidentiary hearings on whether it should issue a preliminary injunction and found that the restraint was reasonable in its geographic scope and duration, but held that plaintiff had no protectible interest to be safeguarded by the covenant. As a result, it denied plaintiff injunctive relief, which then filed an interlocutory appeal.

On appeal, we reversed the trial court's finding that plaintiff could assert no protectible interest, holding instead that the covenant was ancillary to the sale of AMCO and therefore plaintiff had a legitimate interest in AMCO's good will, which could be properly sheltered by the covenant. We found that the reasonableness of the restraint could not be determined, however, because the record was devoid of evidence concerning the scope of the activity to be restrained. To that end, we remanded the case to the trial court for a determination of the scope of plaintiff's business at the time Elmore left its employ, and also instructed the trial court to then determine, in view of the scope of activity, whether the restraint was reasonable.

Elmore petitioned for a rehearing, which we denied on October 9, 1990; he then sought leave to appeal to the supreme court which was

denied as well on February 6, 1991. Although the mandate of this court was filed with the trial court on March 19, 1991, it was not until August 29, 1991, that plaintiff initiated proceedings, seeking direction as to how to comply with our remand order. The court ordered the parties to brief the issue and also to discuss whether the injunction should issue at all, emphasizing the length of time that had elapsed since the original breach of the covenant and, more important, that the temporal extent of the restraint (three years) had expired while the case was on appeal.

The parties filed their briefs on the issues indicated, and the court held a conference on September 19, 1991, at which it expressed its concern over the issue of enforcing the restraint against Elmore at such a late date. It also ordered plaintiff to designate which portions of the record the court should consider while determining the scope of plaintiff's business at the time Elmore left its service and went on to set an evidentiary hearing for February 19, 1992, to examine the question of whether changed circumstances prevented the issuance of the injunction. Meanwhile, on October 21, 1991, plaintiff filed an amended verified complaint, which continued to seek the injunctive relief it requested in the original complaint, but also added counts seeking damages for Elmore's breach of the covenant in addition to an accounting and disgorgement action. Plaintiff's multiple actions for damages are pending in the trial court, awaiting the outcome of this interlocutory appeal.

In compliance with the court's September 19, 1991 order, the parties designated the record and submitted briefs on the subject of plaintiff's business at the time Elmore left its employ, and a hearing was held on February 18, 1992. On March 10, 1992, the court issued a memorandum of opinion in which it found that the scope of plaintiff's business extended only to rendering managerial services to condominium and townhome associations and that it did not include managing apartment buildings or commercial properties; it further determined that the scope never included offering any type of maintenance service to anyone.

Although the court found that the duration, scope and geographical extent of the restraint were reasonable, it did not enjoin defendant; instead, it entered an order based on the memorandum of opinion and set the cause for a status report on March 25, 1992. On that date, the court directed Elmore to file his verified answer to plaintiff's amended complaint and ordered the parties to brief issues that it termed "the propriety of entering an injunction after the expiration

of the original covenant and the impact of change in circumstances and 'time served.' "

On June 2, 1992, the parties appeared in court to discuss these issues and at first, all agreed that the appropriate measure to take was to certify to this court the following issue for an immediate interlocutory appeal: whether an injunction should issue after the original covenant period had expired while the reasonableness of the restraint was being decided in the appellate court. The parties drafted the order certifying the question, but before the court signed the draft order, it held an off-the-record conference in chambers. After this conference, the court ordered Elmore to file a petition manifesting a sufficient change in circumstance, thereby necessitating an evidentiary hearing.

Elmore filed his petition and attached thereto affidavits of customers who attested that they had contracted for Elmore's services in the management of their condominium associations and who vowed that they would not employ plaintiff in the event that Elmore were to be restrained from providing the contracted-for services. However, these affidavits did not comply with Supreme Court Rule 191(a) (134 Ill. 2d R. 191(a)), as they were not notarized, and were thus incompetent as evidence. Accordingly, the court found Elmore's petition insufficient to raise an issue of fact warranting an evidentiary hearing on changed circumstances.

Nevertheless, the court denied plaintiff's motion for injunctive relief. It felt that to issue an injunction at so late a date would be vindictive and, more significant, that plaintiff could be adequately compensated for Elmore's breach via its still-pending actions for damages. The court opined that not only would the injunction be unduly harsh on Elmore, but that it would also be impossible to enforce against those parties who had entered into contracts for Elmore's services in violation of the restraint. The plaintiff filed a timely notice of interlocutory appeal pursuant to Supreme Court Rule 307(a)(1). 134 Ill. 2d R. 307(a)(1).

I

In *Hamer I*, we declined Elmore's invitation to review the trial court's refusal to issue a preliminary injunction under the traditional abuse of discretion standard. Instead, in *Hamer I* we determined that the appropriate standard was "whether the decision of the trial court [is] *** contrary to the manifest weight of the evidence or whether the court erred as to the applicable law or both." (*Hamer I*, 202 Ill. App. 3d at 1006, 560 N.E.2d at 915.) In reaching our decision, we

analogized to and relied upon our supreme court's decision in *Dixon Association for Retarded Citizens v. Thompson* (1982), 91 Ill. 2d 518, 524-25, 440 N.E.2d 117, 120.

In *Dixon Association* the court held:

" 'In this case we do not feel limited by the traditional scope of review of an order issuing a preliminary injunction. Although the order in this case purports to be a preliminary injunction and many references are made in the order to the fact that the court is only preserving the *status quo* until there can be a hearing on the merits, this order is, in effect, a decision on the merits of the case. It should be noted that the transcript of the hearing on the motion for preliminary injunction is in excess of 4,000 pages. Approximately 28 witnesses testified and more than 80 exhibits were introduced. The hearing lasted approximately 15 days.' " *Hamer I*, 202 Ill. App. 3d at 1005-06, quoting *Dixon Association*, 91 Ill. 2d at 525, 440 N.E.2d at 120.

Like the *Dixon* court, we did not feel constrained to use the traditional standard of review because the trial judge, by requiring the plaintiff to prove by a preponderance of the evidence the four elements of a preliminary injunction, reached the ultimate merits of the issue. We premised our conclusion primarily upon the trial court's apparent belief that it had all the evidence necessary to render a fully informed decision on the merits of the injunction and that the record supported the trial court's belief.

Elmore ignores our decision in *Hamer I* as to the proper standard of review, arguing anew that we should employ the less rigid "abuse of discretion" standard rather than the "manifest weight of the evidence" standard. He suggests that because plaintiff has two counts seeking damages still pending at the trial court level and because the trial court has yet to reach the merits of the permanent injunction sought, we are to review only the court's denial of preliminary relief. He may therefore be implying either that we erred earlier or that circumstances subsequent to our remand of the action turned what had been a *de facto* decision on the merits into only a preliminary decision.

■■ However, neither of these implications is supported by Elmore's arguments, for he offers no authority which even tends to indicate that we were mistaken in *Hamer I*. Additionally, Elmore fails to point to, nor do we find, anything in the record on remand which mandates a departure from the standard we utilized in *Hamer I*. In fact, the opposite is true. The trial court on remand actually provides additional assurances that the standard of review we applied in *Hamer I* is equally appropriate here as well. In determining the scope of

plaintiff's business at the time Elmore ceased to be in its employ, the trial court noted:

> "The 'likelihood of prevailing on the merits' standard is not meant to reduce Plaintiff's burden of proving by a preponderance of evidence the elements necessary for injunctive relief. [Citation.] In order for a preliminary injunction to issue, the plaintiff must establish by a preponderance of the evidence the four elements necessary for injunctive relief. [Citation.] The standard is not satisfied by Plaintiff's attempt to support its case with the weakest kind of evidence (inference) ***. An injunction should be granted only where Plaintiff establishes a clear right to relief. *** [T]he court finds no other evidence preponderating on the nature and scope of Plaintiff's business."

Similarly, in *Hamer I*, we relied on the trial court's use of the preponderance standard to reach our conclusion on the proper mode of review to employ. We stated:

> "In our opinion, the court's use of the 'preponderance of the evidence' standard and not only its willingness but its very ability to make explicit findings and conclusions indicate that it felt that it possessed all of the evidence necessary to render, *in effect*, a fully informed decision on the merits." (Emphasis in original.) (*Hamer I*, 202 Ill. App. 3d at 1006, citing *Dixon Association*, 91 Ill. 2d 518, 440 N.E.2d 117.)

Accordingly, despite Elmore's protestations to the contrary, we shall once again review all of the trial court's findings of fact and its determinations of law using the standard we laid down in *Hamer I*: "[W]hether the decision of the trial court to deny plaintiff injunctive relief [is] contrary to the manifest weight of the evidence or whether the court erred as to the applicable law or both." 202 Ill. App. 3d at 1006.

## II

Moving now to the heart of this appeal, plaintiff questions the propriety of the many procedural steps the court imposed upon the parties in its attempt to comply with this court's decision in *Hamer I*. As noted above, the court on remand accepted memoranda and heard argument on the following issues: (1) whether the injunction can issue if the durational scope of the covenant expired while the case was being determined; (2) whether it should accept additional evidence on the issue of the reasonableness of issuing an injunction; and (3)

whether the injunction should issue in view of "changed circumstances" and "time served" by Elmore under the covenant.

■ Plaintiff contends that all these procedural "hoops" were unnecessary and, more important, violated our mandate from *Hamer I.* The precise language of that mandate is as follows:

> "[W]e remand the cause to the trial court for a determination based on the record of (1) the nature and scope of plaintiff's business as of the time that Elmore left his employment and, assuming that the record contains sufficient evidence upon which the trial court can resolve that issue, (2) whether the restraint on Elmore's activity in that business would be a reasonable one." (*Hamer I*, 202 Ill. App. 3d at 1010, 560 N.E.2d at 918.)

Plaintiff would have us read our mandate as allowing the trial court to decide, based solely on the record developed before it took the initial appeal, what business plaintiff was engaged in at the time Elmore left its employ in March 1988. The plaintiff would then require the trial court to decide, in the vacuum of that record alone, whether the restraint was reasonable.

Plaintiff's exceedingly narrow interpretation of the mandate is incorrect for two reasons. First, nothing in the language of the remand order suggests that we proscribed adding to the record. In fact, the mandate itself contemplated the parties' supplementing the record as we merely assumed that the existing record would be sufficient. In any event, plaintiff's argument is moot because the trial court considered only the possibility of holding further evidentiary hearings on the reasonableness of the restraint; it never followed through by allowing any augmenting of the record with additional proof.

Plaintiff's second complaint regarding the procedures used by the trial court concerns whether it erroneously accepted memoranda on the reasonableness of the restraint. Plaintiff seems to believe that under our remand order, we dictated that once the court determined the scope of plaintiff's business, it would intrinsically know if the covenant's restraint on trade was reasonable. This belief misapprehends or disregards the well-established and long-standing principle of Illinois law that the reasonableness of a restraint on trade is a question of law and not one of fact. (*Hamer I*, 202 Ill. App. 3d at 1009, 560 N.E.2d at 917; see also *Tarr v. Stearman* (1914), 264 Ill. 110, 118-19, 105 N.E. 957, 960-61; *Lanzit v. J.W. Sefton Manufacturing Co.* (1900), 184 Ill. 326, 330, 56 N.E. 393, 394; *Tyler Enterprises of Elwood, Inc. v. Shafer* (1991), 214 Ill. App. 3d 145, 573 N.E.2d 863; *Corroon & Black, Inc. v. Magner* (1986), 145 Ill. App. 3d 151, 494

N.E.2d 785.) The trial court, by accepting memoranda and hearing argument on the reasonableness of the restraint, was not adding to the record; it wanted only to have the views of the parties on the prevailing law on the subject as it applied to the facts *already* of record, thereby assisting the court in its determination of reasonableness as a matter of law. Surely, such a procedure cannot, at this late date, be regarded as unprecedented, whether ordained by the trial or the reviewing courts.

## III

The final issue we address is whether the trial court was correct when it refused to enjoin Elmore from violating his covenant not to compete with plaintiff for three years after he ceased to be its employee. In *Hamer I* we held that the covenant at issue in this case was ancillary to the sale of a business as opposed to one which is collateral to an employment contract. (*Hamer I*, 202 Ill. App. 3d at 1009, 560 N.E.2d at 917.) Illinois law views the former more favorably than the latter. (*O'Sullivan v. Conrad* (1976), 44 Ill. App. 3d 752, 755, 358 N.E.2d 926, 929.) However, "[w]hatever may be said for the freedom of contract in general, restrictive covenants impair the availability of services and interfere with competition; therefore, such covenants 'are carefully scrutinized by the courts' " (*Rao v. Rao* (7th Cir. 1983), 718 F.2d 219, 223, quoting *Boyar-Schultz Corp. v. Tomasek* (1981), 94 Ill. App. 3d 320, 323, 418 N.E.2d 911, 913), a scrutiny, we might add, that our courts apply with equal fervor to both types of restraints.

■ Courts will enforce, via injunction, a restraint ancillary to a contract for the sale of a business as long as it constitutes a reasonable restriction on trade in terms of the area, duration and scope of the activity restrained. (*Hamer I*, 202 Ill. App. 3d at 1009, 560 N.E.2d at 917; see also *Donald McElroy, Inc. v. Delaney* (1979), 72 Ill. App. 3d 285, 389 N.E.2d 1300.) As we have stated *supra*, the reasonableness of the restraint is a question of law (*Hamer I*, 202 Ill. App. 3d at 1009, 560 N.E.2d at 917; see also *Tarr*, 264 Ill. at 118-19, 105 N.E. at 960-61; *Lanzit*, 184 Ill. at 330, 56 N.E. at 394; *Tyler Enterprises*, 214 Ill. App. 3d 145, 573 N.E.2d 863; *Corroon & Black*, 145 Ill. App. 3d 151, 494 N.E.2d 785), which nonetheless turns on the unique circumstances of each case. *Hamer I*, 202 Ill. App. 3d at 1009, 560 N.E.2d at 917, citing *Glass Specialty Co. v. Litwiller* (1986), 147 Ill. App. 3d 653, 498 N.E.2d 876; see also *Tarr*, 264 Ill. at 118-19, 105 N.E. at 960-61; *Lanzit*, 184 Ill. at 330, 56 N.E. at 394.

Our supreme court has divided the test for reasonableness of the restraint into three distinct parts. A restraint ancillary to the sale of

a business will be deemed reasonable if it is: (1) necessary in its full extent to protect the purchaser; (2) unoppressive to the seller; and (3) not harmful to the public. *Hamer I*, 202 Ill. App. 3d at 1009, 560 N.E.2d at 917; see *House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 225 N.E.2d 21; *Bauer v. Sawyer* (1956), 8 Ill. 2d 351, 134 N.E.2d 329; see also Restatement (Second) of Contracts § 188 (1981).

Here, the court on remand initially held that the restraint was reasonable, but issued no injunction. At a hearing subsequent to its determination of reasonableness, the court changed its mind, so that by the time of the final hearing on June 31, 1992, it had adopted the view that the restraint was no longer reasonable and was therefore unenforceable, considering the time lag between Elmore's termination of employment with plaintiff (March 1988), when the covenant began to restrain Elmore, and the point of the hearing (June 30, 1992). Moreover, it found that the equities when balanced tipped in favor of Elmore and thus against issuance of the injunction.

Since the reasonableness of the restraint is a question of law, we review the trial court's determination *de novo*. As we recognized in *Hamer I*, good will constitutes a valid interest and its value may be protected by circumscribing the seller's ability to compete against the buyer. (*Hamer I*, 202 Ill. App. 3d at 1007, 560 N.E.2d at 916 ("[A] covenant ancillary to the sale of a business ensures the buyer that the former owner will not walk away from the sale with the company's customers and goodwill, leaving the buyer with an acquisition that turns out to be chimerical"); see also *House of Vision*, 37 Ill. 2d at 37-38, 225 N.E.2d at 24 ("When a business is sold, restraints may be imposed to protect the value of the good will transferred ***").) Plaintiff bears the burden of showing that the full extent of the restraint is necessary to protect this legitimate interest and that it is not sought merely to punish Elmore for breaching the covenant. *Behn v. Shapiro* (1955), 8 Ill. App. 2d 25, 35, 130 N.E.2d 295, 299.

■■ In the case at bar, plaintiff offers no substantive argument addressing why it must have the restraint to protect the value of the good will it purchased from Elmore in 1984, nearly 10 years ago. Nor does it offer any other rationale to explain why it must have the full extent of the restraint at the present time. Instead, it prefers to object to every perceived deviation from our mandate. Consequently, by failing to point to anything in the record which supports the full extent of the restraint, plaintiff has failed to bear the burden of proving the necessity of the restraint and we may accordingly affirm the trial court on this ground alone.

Furthermore, we agree with the trial court that the record before us does not manifest the reasonableness of the restraint at this point in time. Although not argued by plaintiff, we are mindful of the fact that in *Hamer I*, which was decided nearly three years ago, we determined that the length and breadth of this restraint were necessary and vital to plaintiff because of the importance its successors placed on obtaining the covenant as a condition precedent to purchasing Elmore's business. We saw that as evidence that the restraint was indispensable to ensure that Elmore could not, by competing with plaintiff, render illusory the good will plaintiff purchased. However, we do not now feel constrained by that decision because, while we may have been correct about the value of the restraint in 1989-90 when *Hamer I* was decided, we also recognize that as a matter of logic and economics, the importance and vitality of the restraint to plaintiff must diminish as time passes. As a consequence, a restraint which was reasonable at one time is not therefore reasonable in perpetuity, but on the contrary, will necessarily be rendered unreasonable by the passage of time. *Agrimerica, Inc. v. Mathes* (1990), 199 Ill. App. 3d 435, 451, 557 N.E.2d 357, 358 (directing trial court on remand to determine the reasonableness of a restraint based on, *inter alia*, "the effect that the passage of time may have had upon the parties' interests since the initial violation of the [covenant not to compete]").

In addition, the agreement *sub judice* itself evinces an understanding of the postulate that Elmore's ability to influence the value of the good will would decline over time. Under its terms, Elmore would be free to compete with plaintiff only three years after he ceased to be in its employ. Considering that the trial court passed upon the motion for an injunction nearly five years after the restraint became effective, plaintiff would not seem able to assert a very pressing need for the restraint, even if it had made an attempt to do so.[2]

Moreover, the trial court was of the opinion that plaintiff could be sufficiently compensated for whatever loss it suffered because of Elmore's breach of the covenant via the claims for damages that ac-

---

[2]We also note that plaintiff's assertions on appeal that it must have an injunction to protect the value of its good will is belied by the casualness plaintiff displayed in reinstituting these proceedings on remand. Although our mandate was filed with the circuit court in March 1991, plaintiff made no efforts to enjoin Elmore's ongoing competition for nearly half a year. The only possible inference we can draw from this passivity is that Elmore's competition is not as ruinous as plaintiff presently contends, further supporting the conclusion that the restraint is no longer vital to the value of its good will.

companied plaintiff's demand for an injunction. At the final hearing on June 30, 1992, the trial court stated:

"To issue an injunction from day one at this point would seem vindictive particularly where there is a cause of action for damages, and therefore the Court declines to enforce the injunction for the reasons stated. ***

I do this because in considering the so-called harm and benefits when I send a party away here although plaintiff did not get its injunction it at least will have the benefit of obtaining damages as a result of the violation."

As a result, it factored the possibility of a recovery of possible compensatory damages into its calculus of reasonableness, and we concur in that result. Plaintiff offers nothing to explain why damages are an inadequate remedy other than to argue that it seeks the benefit of its bargain. But our supreme court has rejected such an argument as the sole rationale to support enforcement of a restraint. (*House of Vision, Inc.*, 37 Ill. 2d 32, 225 N.E.2d 21; *Bauer*, 8 Ill. 2d 351, 134 N.E.2d 329.) Implicit in these cases is the idea that society prizes competition more highly than it does the ability of an individual to enter into private agreements, and that when the two come into direct conflict, the interest of the individual must give way to that of the many. The only exception to this is where the restraint on lawful competition serves a purpose other than merely being the fruit of a contractual relationship; it must be *necessary* to protect the interest purchased in the agreement, and as shown above, we cannot say that the requisite necessity is present here. Considering the difference in time between the occurrence of the breach and when the injunction would issue, as well as the fact that plaintiff may be compensated for any damages it suffered in the still-pending action, we hold that the trial court adopted the eminently appropriate view that the full extent of the restraint was no longer necessary to protect the value of plaintiff's good will, and thus, the restraint was no longer reasonable as a matter of law.

The court also considered the element of hardship to Elmore and found that this, too, militated against enforcing the injunction. Plaintiff objects to this inquiry, characterizing it as an inappropriate "balancing of the equities," and raising once again its assertion that the court went beyond our mandate thereby. Plaintiff's argument again misapprehends the nature of that mandate. We remanded this case for a determination of the *reasonableness* of the restraint, and among the factors courts take into consideration in order to resolve the issue is the hardship the injunction will impose on the party to be re-

strained. (*House of Vision,* 37 Ill. 2d 32, 225 N.E.2d 21; *Bauer,* 8 Ill. 2d 351, 134 N.E.2d 329.) Rather than violating the mandate of *Hamer I,* the trial court was attempting to comply with it fully by inquiring into the effect of the restraint on Elmore, which is the second aspect of our supreme court's test for reasonableness. (See *Hamer I,* 202 Ill. App. 3d at 1009, 560 N.E.2d at 917; see also *House of Vision,* 37 Ill. 2d 32, 225 N.E.2d 21; *Bauer,* 8 Ill. 2d 351, 134 N.E.2d 329.) In fact, under *House of Vision,* had the court issued the injunction restraining Elmore while unaware of its probable deleterious consequences toward him, it would have constituted error.

In support of its argument that to balance the equities was error, plaintiff points to cases wherein the court refused to consider the hardship to the plaintiff; but those cases generally stand for the proposition that it is improper to balance equities "where defendant's actions were done with full knowledge of the plaintiff's rights and with an understanding of the consequences which might ensue." (*A B C Trans National Transport, Inc. v. Aeronautics Fowarders, Inc.* (1978), 62 Ill. App. 3d 671, 682, 379 N.E.2d 1228, 1238.) Even were we to agree that the court was balancing equities rather than merely conducting the test mandated by *House of Vision,* the instant case is distinguishable because Elmore, although aware of the covenant in 1988 when he allegedly breached it, could not have foreseen that due to protracted litigation, he would remain restrained from competition against plaintiff until 1996 if the full three-year injunction were now to issue.

Furthermore, in reliance on the trial court's denial of the injunction in 1988, Elmore invested in a company which competes with plaintiff and which plaintiff now seeks to enjoin. While we do not suggest in general that litigants who are aware that a favorable decision of a trial court is being appealed may bank on an affirmance of that order in all cases, we cannot require Elmore to have had the prescience to foresee that the trial court's determination would be reversed by this court on August 24, 1990. As the trial court noted:

> "[W]here the unsuccessful party [on appeal] relies upon a trial order that denies enforcement of a restrictive covenant, and I confess error here but I would like to state that my reasons were at least reasonably palatable. I mean it wasn't a flipped coin kind of case. So not that it would have made a difference, but the prevailing party at trial (Elmore) here didn't exactly take a risk that the opinion was so unsubstantiated that no one would think seriously that it would be affirmed, but they went about their work and competed apparently."

Consequently, this is not the situation where a defendant in an action seeking an injunction is so radically at fault that a balancing of the equities is completely inappropriate; we accordingly agree with the trial court that to impose the injunction at this late date would result in grave hardship to Elmore.

Finally, there is no competent evidence in the record as to the effect the restraint would have on the welfare of the public. Elmore offered affidavits of his present customers who swore that they would not employ plaintiff to manage their condominiums even if the court enjoined Elmore from performing on their contracts. These affidavits lacked, however, the seal of a notary and as such do not comport with Supreme Court Rule 191(a). (134 Ill. 2d R. 191(a).) Nonetheless, the trial court's decision can be sustained by relying only upon the first two factors of the *House of Vision* test. Given the declining value of the restraint to plaintiff, the possibility that it will be able to recover money damages for Elmore's alleged breach of the covenant in the case pending in the circuit court and the devastating effect restraining Elmore would have on his corporation, we agree with the trial court and find that the restraint, at present, is unreasonable as a matter of law. Accordingly, the trial court was correct to refuse to enjoin Elmore's competition with plaintiff.

Plaintiff raises a final issue concerning the court's determination of the scope of its business. However, because we affirm the trial court's refusal to issue any injunction, we have no cause to review its factual determination as to what activities of the plaintiff are enjoinable.

For all the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

McCORMICK, P.J., and DiVITO, J., concur.