(No. 76730.

*In re* ESTATE OF ANNA V. FRENCH, Deceased (Dee Anna Musgrave *et al.*, Appellees, v. Charles A. French, Appellant).

*Opinion filed May 18, 1995.*

HEIPLE, J., dissenting.
FREEMAN, J., joined by HEIPLE, J., dissenting.

Law Offices of Morris Lane Harvey, of Fairfield, for appellant.

Kevin C. Kakac, of Cochran & Kakac, of Fairfield, for appellees.

JUSTICE McMORROW delivered the opinion of the court:

In this appeal we are asked to reconsider the decision in *Almon v. American Carloading Corp.* (1942), 380 Ill. 524, in which this court held that an order disqualifying a party's counsel for conflict of interest is not subject to immediate appeal.

I

The record reveals the following pertinent information. Anna V. French died in May 1990. Her will nominated Charles A. French (hereafter referred to as Charles) as executor of her estate, and he was later appointed executor by court order. During his period as executor of the estate, Charles was represented by attorney John C. Robison, Jr.

In April 1993, certain of the heirs to Anna French's estate (hereafter referred to as appellees) filed a petition

in the circuit court of Wayne County to remove Charles as executor of the estate. The petition alleged that Charles had mishandled estate funds in breach of his fiduciary duties. A few weeks later, attorney Morris Lane Harvey filed a special and limited appearance on behalf of Charles and contested the court's jurisdiction to entertain the appellees' petition to remove Charles as executor.

Shortly thereafter, the appellees filed a motion to disqualify attorney Harvey as Charles' counsel, citing conflict of interest. They claimed that Harvey had provided them with legal advice regarding the formation of a corporation to receive the assets bequeathed to the appellees under the terms of the French will. The appellees claimed that because attorney Harvey had consulted with them and provided them with legal advice regarding the formation of the corporation, attorney Harvey could not represent Charles with respect to their petition to remove Charles as executor of the French estate.

Following briefing and argument, the trial court allowed the disqualification motion and attorney Harvey was disqualified from representing Charles in the probate action involving Anna French's estate. The trial court also denied Charles' motion to reconsider. In its order denying the motion to reconsider, the trial court found no just reason to delay enforcement of or appeal from its ruling. 134 Ill. 2d R. 304(a).

Charles took an appeal from the trial court's disposition. However, the appellate court entered an order that dismissed the action, relying on *Almon*, 380 Ill. 524, for the proposition that an order disqualifying a litigant's counsel is not subject to immediate appeal in this State. We allowed Charles' petition for leave to appeal (145 Ill. 2d R. 315(a)).

## II

Charles argues that this court should overrule *Almon*. He contends that the rule announced in *Almon* is too drastic and severe, because it deprives a litigant of counsel he has chosen to represent him during the proceeding. Charles claims that if a disqualification order is not accorded immediate review by the appellate court, the litigant whose counsel is disqualified is effectively denied adequate appellate review of the disqualification order.

The appellees respond that the *Almon* rule should be retained. The appellees suggest that immediate appeal would cause considerable delay in reaching ultimate resolution of the merits of the parties' underlying dispute, and that the harms from such delay outweigh any value in immediate appellate review of the trial court's disqualification decision.

In *Almon*, 380 Ill. 524, employees of a freight company, who were members of various local unions, had a dispute with a carloading company. The dispute was later settled and an agreement reached between the parties. Thereafter, a disagreement arose as to the terms of the settlement agreement. Various employees filed suit against the carloading corporation as well as the officials of a local union who had participated in the settlement negotiations. After the defendants filed an answer to the plaintiffs' complaint, the plaintiffs filed a motion to disqualify the defendants' attorney of record. Following a hearing, the trial court allowed the plaintiffs' motion and disqualified the defendants' attorney from representing them during the proceeding. The appellate court denied a motion to dismiss the appeal and considered the cause on its merits.

On review, this court rejected the defendants' argument that the trial court's disqualification order was governed by the rules of interlocutory appeal pertaining to injunctions and appointment of receivers. (*Almon*,

380 Ill. at 528-29.) The court noted that the "purpose of an interlocutory injunction is to preserve the rights of some one or more of the parties and continue the property and the rights therein *in statu quo* until the cause can be disposed of on the merits." (*Almon,* 380 Ill. at 529.) The court determined that the disqualification order "has no bearing on the merits of the litigation" and that it was "not of the character" that was intended to be governed by rules permitting an interlocutory appeal from an order granting or denying an injunction. *Almon,* 380 Ill. at 529.

In addition, this court ruled that the trial court's disqualification order was not immediately final and appealable. It reasoned as follows:

"A judgment or decree is final and reviewable when it terminates the litigation on the merits of the case and determines the rights of the parties. [Citations.] One of the essential elements of finality of a decree is that if affirmed the only thing remaining to do is to proceed to its execution. [Citations.] The order in question had no bearing on the rights of the defendants as to the matters involved in their litigation with the plaintiffs. They were not deprived of the right to be represented by an attorney, for the order made provision for the substitution of counsel of their own selection. The order appealed from was on a matter collateral to the main issue and not a final and appealable order." (*Almon,* 380 Ill. at 530-31.)

On this basis, the court concluded that the appellate court should have dismissed the appeal for lack of jurisdiction.

This court has recognized and applied the rule in *Almon* in subsequent decisions. (*People ex rel. Woll v. Graber* (1946), 394 Ill. 362, 369; *People ex rel. School District No. 88 v. Holland* (1943), 384 Ill. 277, 280.) The *Almon* rule has also been applied by our appellate court. (See, *e.g., Transamerica Insurance Co. v. Vassilos* (1989), 181 Ill. App. 3d 939, 941; *Matsunaga v. Worrell* (1988), 169 Ill. App. 3d 681, 682; *National Wrecking Co. v.*

*Midwest Terminal Corp.* (1987), 164 Ill. App. 3d 621, 624; *Leib v. Toulin, Inc.* (1983), 113 Ill. App. 3d 707, 720-21; *Chicago Title & Trust Co. v. Guaranty Bank & Trust Co.* (1978), 59 Ill. App. 3d 362, 364-65; but see *Leckrone v. City of Salem* (1987), 152 Ill. App. 3d 126 (holding that disqualification order is final and subject to immediate appeal).) However, some reviewing courts have expressed displeasure with the rule and have suggested that this court should overrule it. (See, *e.g.*, *National Wrecking*, 164 Ill. App. 3d at 624; *Chicago Title & Trust*, 59 Ill. App. 3d at 365.) For the reasons that follow, we conclude that this court should retain the *Almon* rule and we reaffirm its continued validity under current civil procedure rules in this State.

### III

Initially we note that Charles does not seriously challenge the *Almon* court's ruling that a disqualification order is not in the nature of injunctive relief from which an immediate appeal is warranted. Although our current rules of procedure specify that injunctive relief may be immediately appealed (134 Ill. 2d R. 307), our jurisprudential interpretations have held that this rule does not encompass orders that do not strictly conform to an award of injunctive relief (see, *e.g.*, *Almgren v. Rush-Presbyterian-St. Luke's Medical Center* (1994), 162 Ill. 2d 205). In light of this precedent, it is clear that an order regarding disqualification of counsel is not an interlocutory ruling for injunctive relief from which a party may take an immediate appeal.

Charles contends that the *Almon* holding should be narrowly construed to pertain only to the question of whether a disqualification order grants injunctive relief from which interlocutory appeal is appropriate. Charles claims that *Almon* did not decide the separate question of whether a disqualification order is final and appealable. Charles' interpretation of *Almon* is inaccurate. As

noted above, *Almon* also decided that a disqualification order is not final and appealable (*Almon*, 380 Ill. at 531 (the disqualification "order appealed from was on a matter collateral to the main issue and was not a final and appealable order")).

Charles further contends that this court should hold that a disqualification order is a final and appealable ruling. Based upon well-established interpretations of our rules of civil procedure respecting final and appealable orders, we find Charles' claim inconsistent with our precedent. Under our current rules of procedure, Rule 301 states in pertinent part that "[e]very final judgment of a circuit court in a civil case is appealable as of right." (145 Ill. 2d R. 301.) In general, a final and appealable judgment is defined as one in which the trial court has determined the merits of the parties' claim, such that the only remaining action is to proceed with execution of the judgment. (*In re Marriage of Verdung* (1989), 126 Ill. 2d 542, 553; *Flores v. Dugan* (1982), 91 Ill. 2d 108, 113.) This general definition of a final and appealable order is consistent with the *Almon* court's view of a final and appealable judgment.

Our present rules of civil procedure allow for an immediate appeal from a final order that disposes of fewer than all of the claims between all of the parties. (134 Ill. 2d R. 304(a).) This court has explained that a final order under Rule 304(a) " 'must be final in the sense that it disposes of the rights of the parties, either upon the entire controversy or upon some definite and separate part thereof.' " (*Treece v. Shawnee Community Unit School District No. 84* (1968), 39 Ill. 2d 136, 139, quoting *Village of Niles v. Szczesny* (1958), 13 Ill. 2d 45, 48.) In addition, this court has defined a claim as "any right, liability or matter raised in an action." *Marsh v. Evangelical Covenant Church of Hinsdale* (1990), 138 Ill. 2d 458, 465.

Since the adoption of the principles stated in Rule 304(a), the court has held that a variety of orders, which commonly dispose of less than all of the claims between all of the parties, may be subject to immediate appeal. See, *e.g.*, *Marsh*, 138 Ill. 2d 458 (award of attorney fees under Rule 137); *Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427 (accounting); *White Way Sign & Maintenance Co. v. Seltzer Pontiac, Inc.* (1974), 56 Ill. 2d 342 (garnishment); *Hanley v. Hanley* (1958), 13 Ill. 2d 209 (accounting); *Smith v. Hodge* (1958), 13 Ill. 2d 197 (attachment).

We do not believe that a disqualification order falls into the same class as orders that have been held to be immediately appealable upon a proper trial court finding under Rule 304(a). Unlike orders for attachment, garnishment, accounting, or attorney fees, a disqualification order grants no relief with respect to the substantive merits of a claim between the parties that has been raised in the actual controversy between them. Whether an attorney is acting under a conflict of interest that warrants his or her disqualification is not an issue that has a direct or immediate impact on the merits of the rights or liabilities asserted in the litigation pending between the parties. As this court observed in *Almon*, an attorney's qualifications to remain as counsel for a litigant involve matters wholly collateral to and independent from the substantive claims postulated by the litigants. (*Almon*, 380 Ill. at 531.) As a result, we adhere to the ruling in *Almon* and conclude that a disqualification order is not a final order under Rule 304(a).

Charles contends that principles of fairness to the litigants, as well as the urgent need for immediate appellate review, would support the conclusion that a disqualification order should be subject to immediate appellate review under Rule 304(a). Charles also relies upon remarks of the appellate court that have criticized

this court's *Almon* ruling with respect to the appealability of a disqualification order (*National Wrecking*, 164 Ill. App. 3d at 624; *Chicago Title & Trust*, 59 Ill. App. 3d at 364-65). Further, Charles suggests that disqualification motions provide a prime opportunity for abuse by the litigants. (See *Hannan v. Watt* (1986), 147 Ill. App. 3d 456, 461-62.) Charles also asserts that a disqualification order should be held as final and appealable because an aggrieved litigant who must await the close of trial before appealing the disqualification ruling is effectively denied any meaningful appellate consideration of the trial court's ruling. Although we are not unmindful of the concerns expressed by Charles, we believe that they are better addressed by the discretion of the trial court in its consideration of whether a particular disqualification motion should be allowed or denied.

We conclude that the trial court's disqualification order in the instant proceeding was not a final order and that as a result no immediate appeal could be taken therefrom. The trial court's finding pursuant to Rule 304(a) could not convert its ruling into a final and appealable order. Because the trial court's order was not immediately appealable, the appellate court was correct when it dismissed the cause for lack of appellate jurisdiction. As a result, we affirm the appellate court's dismissal of the instant appeal.

In closing, we note that the parties also dispute whether this court should adopt the Federal "collateral order doctrine." Under the collateral order doctrine, an immediate appeal is allowed for prejudgment orders that "finally determine claims of right separable from, and collateral to, rights asserted in the action, [where the prejudgment orders are] too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole

case is adjudicated." (*Cohen v. Beneficial Industrial Loan Corp.* (1949), 337 U.S. 541, 546, 93 L. Ed. 1528, 1536, 69 S. Ct. 1221, 1225-26.) To come within the collateral order rule, an order must satisfy three criteria. These criteria are that the order (1) "conclusively determine[s] the disputed question," (2) "resolve[s] an important issue completely separate from the merits of the action," and (3) is "effectively unreviewable on appeal from a final judgment." (*Coopers & Lybrand v. Livesay* (1978), 437 U.S. 463, 468, 57 L. Ed. 2d 351, 357-58, 98 S. Ct. 2454, 2458.) In *Richardson-Merrell, Inc. v. Koller* (1985), 472 U.S. 424, 86 L. Ed. 2d 340, 105 S. Ct. 2757, the United States Supreme Court held that a prejudgment disqualification order does not fall within the collateral order rule because such an order is not effectively unreviewable under Federal law upon an appeal from final judgment. Similarly, under Illinois law, a disqualification order may be reviewed in an appeal from final judgment. (*Almon*, 380 Ill. 524.) In view of the Supreme Court's holding in *Richardson-Merrell*, we conclude that the Federal collateral order doctrine would not validate Charles' attempt at immediate interlocutory appeal in the present cause. Consequently, we need not and do not reach the question of whether this court should adopt the Federal collateral order doctrine under Illinois civil practice rules.

For the reasons given, the decision of the appellate court is affirmed.

*Affirmed.*

JUSTICE HEIPLE, dissenting:

I respectfully dissent. *Almon v. American Carloading Corp.* (1942), 380 Ill. 524, should be overruled. A litigant's right to be represented by legal counsel of his choice is both very basic and extremely significant. To let a disqualification ruling stand until the case is over

is to deprive a litigant of any meaningful appellate review of the disqualification order.

If the litigant were to appeal the disqualification order after the case is over, he is placed in the untenable position of arguing that the disqualification ruling was so prejudicial as to warrant reversal, *i.e.*, he lost the case because he was forced to change counsel. This is inefficient, costly, and wholly unfair. As a result, the majority's reaffirmance of *Almon*, as well as its determination that disqualification decisions should be left to the trial court's discretion (166 Ill. 2d at 103), accords a trial court exclusive and unreviewable authority over such decisions. A party should be able to choose his own lawyer unless there is a compelling reason for disqualification. Simple justice demands that a disqualification-of-counsel decision by a trial court be subject to immediate interlocutory review.

JUSTICE FREEMAN, also dissenting:

The court today holds that an order disqualifying counsel of a litigant's choice is not final and immediately appealable. Because a disqualification order impacts a most significant right which, if not immediately appealable, may be irretrievably lost, I cannot join in that decision. I, therefore, respectfully, but vigorously, dissent.

Although neither statutorily nor constitutionally mandated, it is fundamental that, in a civil case, a litigant is entitled to be represented by an attorney of his own choice. (*People ex rel. Carey v. Lincoln Towing Service, Inc.* (1976), 40 Ill. App. 3d 126, 131; see also *Richardson-Merrell, Inc. v. Koller* (1985), 472 U.S. 424, 442, 86 L. Ed. 2d 340, 354, 105 S. Ct. 2757, 2767 (Stevens, J., dissenting); 7A C.J.S. *Attorney & Client* § 167 (1980).) Where counsel of one's choice is denied, a myriad of practical values are destroyed.

First and most apparently, the attorney-client relationship is directly impacted by a disqualification order.

More often than not, a client has been involved with a particular attorney from the inception of a controversy. As a result, the client has developed a level of trust and confidence in that attorney and her abilities. A disqualification order deprives the client of that relationship. Second, in order that the underlying litigation not be too long delayed, disqualification requires the deprived litigant to initiate, with some measure of haste, a new attorney-client relationship. Third, the deprived litigant will necessarily incur additional costs to retain the services of a new attorney, not to mention the loss of dollars already expended for services of the disqualified attorney. Finally, aside from the impact on the client, there will be delay occasioned by the deprived party's need to locate and retain new counsel, as well as by new counsel's need to properly prepare to effectively take over the litigation.

Notwithstanding these concerns, the majority holds that the availability of appeal of a disqualification order following final judgment in the underlying litigation is sufficient. Even beyond the practical concerns, I question what relief would be adequate after the litigation has ended. Assuming reversal of the final judgment on the underlying litigation to be that relief, it is fatuous to suppose that such relief is in any way adequate.

Where a disqualification order is not immediately appealed, the right to counsel of one's choice is irretrievably lost. Whether the party prevails or loses in the underlying litigation, the denial of his right to counsel of choice stands to go unvindicated. (See *Chicago Title & Trust Co. v. Guaranty Bank & Trust Co.* (1978), 59 Ill. App. 3d 362, 365.) In either case, the financial burden and the stress associated with litigation, alone, will dissuade a party from seeking reversal.

Again assuming reversal is the remedy, I would hesitate to sanction any rule requiring reversal absent some

showing of prejudice. (See *Richardson-Merrell, Inc.*, 472 U.S. at 443, 86 L. Ed. 2d at 354, 105 S. Ct. at 2767 (Stevens, J., dissenting).) Assuming the need to demonstrate prejudice, what prejudice could a deprived, but meritorious, litigant possibly demonstrate to merit reversal of the underlying judgment? Further, what erroneously deprived prevailing party would willingly risk a potentially adverse verdict on retrial? In my mind, to deny immediate appeal of a disqualification order leaves the erroneously deprived party, effectively, without a remedy.

The practical concerns as well as the absence of adequate relief are reason enough to provide for immediate appeal of a disqualification order. Nevertheless, as support for denying immediate appeal, the majority continues to breathe life into this court's 1942 holding in *Almon v. American Carloading Corp.* (1942), 380 Ill. 524. *Almon* holds that a disqualification order is not final and appealable. In support, *Almon* reasons that a judgment or decree is final and reviewable when it (1) terminates the litigation on the merits of the case and (2) determines the rights of the parties. (*Almon*, 380 Ill. at 530.) *Almon* then states that one of the essential elements of finality of a decree is that if affirmed the only thing remaining to do is to proceed to its execution. *Almon*, 380 Ill. at 531.

The court in *Almon* correctly acknowledged that the disqualification order at issue there had no bearing on the rights of the defendants as to the matters involved in their litigation. The court also correctly acknowledged that the disqualification order appealed from was on a matter collateral to the main issue. The court nonetheless concluded, based upon rules governing finality, that the order was not final and appealable.

As I see it, the problem with *Almon*, as well as this majority opinion, is that each fails to appreciate the sig-

nificance of the collateral nature of the disqualification order. In applying the test for finality, the majority and the court in *Almon* focused on the underlying action. To determine the finality of the disqualification order, however, it is the order, not the main action, upon which the court should focus. Only by doing so could the court in *Almon* and the majority here correctly conclude that the disqualification orders are final.

This approach is neither radical nor unprecedented. Consider the analysis in *Leckrone v. City of Salem* (1987), 152 Ill. App. 3d 126. Though the holding in *Leckrone* has no viability in the face of *Almon*, its analysis is, nonetheless, instructive. In *Leckrone*, the court likened an order to disqualify, or refusing to disqualify an attorney, to an order of contempt. Citing this court's opinion in *People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 171-72, the court in *Leckrone* noted that "[t]he imposition of a sanction for contempt is final and appealable because, although occurring within the context of another proceeding and thus having the appearance of being interlocutory, it is an original special proceeding, collateral to and independent of, the case in which the contempt arises. [Citations.] It is the end of the proceeding begun against the witness. There is nothing left to be done but enforce the judgment." *Leckrone*, 152 Ill. App. 3d at 132-33; accord *National Wrecking Co. v. Midwest Terminal Corp.* (1987), 164 Ill. App. 3d 621.

In the context of contempt proceedings, the focus for the finality determination is on the collateral issue. Recognizably, disqualification and contempt proceedings differ in character and purpose. Additionally, reasons permitting immediate appeal of contempt sanctions vary from those supporting immediate appeal of a disqualification order. Nonetheless, in each case, the party directly affected by the particular order risks the deprivation of significant rights. Thus, I believe that the same

flexibility in applying the test of finality to contempt sanctions should be available with respect to disqualification orders.

Without question, and as the court in *Almon* recognized, a disqualification order is a right separable from and collateral to the rights asserted in the main action. As with a contempt sanction, the entry of a disqualification order signals the end of a proceeding initiated against a nonlitigant. The only remaining action on the issue of disqualification is its enforcement. Additionally, as with a contempt sanction, in a disqualification proceeding, concern is with conduct of a nonlitigant, which is independent of the case and controversy in which the disqualification question arises.

Aside from *Almon*, the majority offers no compelling reason to preclude immediate appeal of disqualification orders. In light of the analysis in *Leckrone*, but more particularly *Scott*, I believe that *Almon* is of minimal utility in answering the inquiry presented in this appeal.

As is apparent, there is room for disagreement on this issue of finality with respect to disqualification orders. In the final analysis, however, the label attached to the order is insignificant. This court has authority to make rules governing appeals. (Ill. Const. 1970, art. VI, §§ 6, 16.) Pursuant to that authority, this court has provided for appeals from other than final judgments. (See 134 Ill. 2d Rules 306, 307, 308.) Thus, even conceding the nonfinality of a disqualification order, such determination does not preclude this court's authority to fashion a rule rendering such orders immediately appealable.

The finality rule is, after all, no more than policy designed to prevent the interruption of the progress of litigation by piecemeal appeals that cause delays and often waste judicial effort. Those policies are not

undermined by permitting the immediate appeal of a disqualification order. In fact, immediate appeal may actually promote judicial economy. By contrast, an order that erroneously deprives a party of his chosen counsel frustrates public policy in a way which a post-trial appeal could not mitigate. Moreover, the damage resulting from an erroneous disqualification order is far greater than the disruption occasioned by immediate appeal of such orders. On balance, our interest in finality cannot outweigh a party's significant interest in counsel of his choice. Where deprivation of a right is subject to being irretrievably lost, rigid and technical application of finality rules should give way.

The effect of the majority's holding is to discourage testing of a trial court's disqualification order. Given the unfavorable options available to a litigant erroneously deprived of counsel of choice, appeal following final judgment on the underlying controversy has no real remedial effect. As a practical matter, it makes sense to review the propriety of such orders prior to proceeding with what may be complex, lengthy and costly litigation. Neither the court nor the parties are benefited by the delay occasioned by a later appeal.

For these reasons, I dissent.

JUSTICE HEIPLE joins in this dissent.