AUDIO PROPERTIES, INC., d/b/a Chicago Recording Company, Plaintiff-Appellant, v. WILLIAM KOVACH *et al.*, Defendants-Appellees.

First District (1st Division)    No. 1—94—4305

Opinion filed September 5, 1995.

Katz, Randall & Weinberg, of Chicago (Warren Lupel and Brian A. Bosch, of counsel), for appellant.

Arthur M. Holtzman and Marilee Roberg, both of Pedersen & Houpt, of Chicago, for appellee William Kovach.

Steven Robert Verr, of Law Offices of Steven Robert Verr, of McHenry, for appellees Michael Topel and Swell Pictures, Inc.

JUSTICE BRADEN delivered the opinion of the court:

Plaintiff, Audio Properties, Inc., d/b/a Chicago Recording Company (CRC), appeals from a November 15, 1994, order by the circuit court of Cook County, granting the verified motion of defendant, Swell Pictures, Inc. (Swell Pictures), to disqualify plaintiff's counsel, as well as a November 28, 1994, order denying CRC's motion for preliminary injunction.

We affirm.

The record indicates that CRC and William Kovach (Kovach) entered into an employment agreement on July 15, 1988, under which Kovach was employed as a post-production sound engineer. CRC's primary business was providing post-production audio services for radio, television, slide shows, and other media. Kovach was responsible for recording live voice-overs, sound effects and music, which Kovach would marry to video portions of the production. The record indicates that CRC provided Kovach with a dedicated studio designed and customized in part to meet his specific professional requirements.

The employment agreement between Kovach and CRC was for a term of five years, with an automatic one-year renewal for each year after 1993, unless either party gave 180 days' written notice of its intention to terminate the agreement. The parties' agreement contained an express covenant under which Kovach agreed not to compete with CRC for a period of one year after leaving CRC's employ. The agreement stated in part as follows:

"Kovach shall not *** engage in, or have any interest whatsoever in, the sound recording business, including but not limited to, the production of sound recordings, records and pressings, film, and tape duplication and reproduction, and the providing of sound recording and duplication services *** [Prohibited Services]; provided, however, that the forgoing restrictions shall apply (i) only within a radius of four (4) miles from [CRC's] offices located at 232 East Ohio Street in Chicago, Illinois, and (ii) only if the Prohibited Services are being performed for any person, firm or corporation to whom, to the knowledge of Kovach, sound recording services have been rendered by [CRC] during the term of Kovach's employment with [CRC]."

The record reveals that Kovach gave written notice of his inten-

tion to terminate this employment agreement on or about September 14, 1994, to be effective September 30, 1994. Kovach was subsequently employed as a sound engineer by Swell Pictures, a CRC competitor, allegedly in violation of the express language of the noncompete covenant contained in the parties' agreement. Swell Pictures was located at 455 North City Plaza, Chicago, Illinois, less than four miles from CRC.

On October 18, 1994, CRC filed a verified complaint for injunction and other relief, as well as a motion for preliminary injunction against Kovach and Swell Pictures, along with Michael Topel as its principal. In its action, CRC sought to enjoin Kovach from breaching the covenant not to compete. Specifically, CRC moved the trial court to enjoin Kovach from working with 24 of CRC's existing clients for a period of one year from the date of his resignation. On November 14, 1994, Swell Pictures filed a verified motion to disqualify plaintiff's counsel. On November 15, 1994, the trial court entered an order disqualifying CRC's counsel, William J. McKenna, Jr., and the law firm of Hopkins & Sutter. On November 28, 1994, the trial court conducted an evidentiary hearing and entered an order denying CRC's motion for preliminary injunction.

The first issue to address is whether the trial court erred in denying CRC's motion for preliminary injunction. CRC argues that the trial court erred in determining that it had no legitimate, protectable, business interest, as needed to enforce the restrictive covenants in Kovach's employment agreement.

We begin by noting that a preliminary injunction is a provisional remedy granted to preserve the status quo, pending a hearing on the merits of the case. (*Office Mates 5, North Shore, Inc. v. Hazen* (1992), 234 Ill. App. 3d 557, 599 N.E.2d 1072.) A preliminary injunction is an extraordinary remedy used only in situations where an extreme emergency exists and serious harm would result in the absence of an injunction. (*Label Printers v. Pflug* (1991), 206 Ill. App. 3d 483, 490, 564 N.E.2d 1382, 1387.) A party seeking a preliminary injunction must show that (1) he possesses a clear right or interest needing protection; (2) an inadequate remedy at law; (3) irreparable harm will result if it is not granted; and (4) there is a reasonable likelihood of success on the merits. *Office Mates 5, North Shore*, 234 Ill. App. 3d at 567, 599 N.E.2d at 1079.

The decision to grant or deny preliminary injunctive relief lies within the sound discretion of the trial court, and a reviewing court's role is limited to determining only whether the trial court abused that discretion. (*Hamer Holding Group, Inc. v. Elmore* (1990), 202 Ill. App. 3d 994, 1005, 560 N.E.2d 907, 914.) A reviewing court will not

reverse the trial court's decision unless that decision is against the manifest weight of the evidence. *Reinhardt Printing Co. v. Feld* (1986), 142 Ill. App. 3d 9, 15, 490 N.E.2d 1302, 1306.

CRC argues that it has adequately demonstrated a protectable interest in its client base and, therefore, the trial court erred in refusing to enforce the restrictive covenant of the parties' agreement. We disagree.

■ As a general rule in Illinois, an employer ordinarily has no protectable interest in its clients. (*Instrumentalist Co. v. Band, Inc.* (1985), 134 Ill. App. 3d 884, 892, 480 N.E.2d 1273, 1279.) However, this court has repeatedly held that there are two situations in which such an interest may be found to exist for the purposes of enforcing a covenant not to compete: (1) where the former employee acquired confidential information through his employment and subsequently attempted to use it for his own benefit, and (2) where the employer has a near-permanent relationship with its customers and but for his associations with the employer, the employee would not have had contact with the customers. *Office Mates 5, North Shore, Inc. v. Hazen* (1992), 234 Ill. App. 3d 557, 569, 599 N.E.2d 1072, 1080; *Nationwide Advertising Service, Inc. v. Kolar* (1975), 28 Ill. App. 3d 671, 673, 329 N.E.2d 300, 302; see also *LSBZ, Inc. v. Brokis* (1992), 237 Ill. App. 3d 415, 603 N.E.2d 1240; *Tyler Enterprises of Elmwood, Inc. v. Shafer* (1991), 214 Ill. App. 3d 145, 573 N.E.2d 863; *Agrimerica, Inc. v. Mathes* (1990), 199 Ill. App. 3d 435, 557 N.E.2d 357; *Packaging House, Inc. v. Hoffman* (1983), 114 Ill. App. 3d 284, 448 N.E.2d 947.

CRC does not allege, and the record does not suggest, that Kovach misappropriated any confidential information acquired while in CRC's employ. Indeed, CRC concedes that the names, addresses and telephone numbers of its customers are readily obtainable by anyone wishing to contact them. CRC does, however, contend that the trial court abused its discretion in finding that CRC failed to raise a *prima facie* case demonstrating that it had a protectable interest in its clients under the second situation outlined above. As such, the only inquiries are whether CRC had a near-permanent relationship with its customers and whether Kovach would have had contact with CRC clients, but for his employment by CRC.

■ Illinois courts have developed a set of objective factors to consider in determining whether an employer has a near-permanent relationship with its customers. (*LSBZ, Inc. v. Brokis* (1992), 237 Ill. App. 3d 415, 426, 603 N.E.2d 1240, 1248.) These factors include (1) the length of time required to develop the clientele; (2) the amount of money invested to acquire clients; (3) the degree of difficulty in acquiring clients; (4) the extent of personal customer contact by the em-

ployee; (5) the extent of the employer's knowledge of its clients; (6) the duration of the customer's association with the employer; and (7) the continuity of the employer-customer relationships. *LSBZ*, 237 Ill. App. 3d at 426, 603 N.E.2d at 1248; *Agrimerica, Inc. v. Mathes* (1990), 199 Ill. App. 3d 435, 443-44, 557 N.E.2d 357, 363; *McRand, Inc. v. Van Beelen* (1985), 138 Ill. App. 3d 1045, 486 N.E.2d 1306.

The employer, however, is not required to show that the customer relationship is perpetual or indissoluble or that a near-permanent relationship existed with each customer. (*Preffered Meal Systems, Inc. v. Guse* (1990), 199 Ill. App. 3d 710, 723-24, 557 N.E.2d 506, 514.) Nor does the employer have to have an exclusive relationship with its clients to satisfy the near-permanent test. *Instrumentalist*, 134 Ill. App. 3d at 893, 480 N.E.2d at 1280.

■ Application of the first objective factor, the length of time required to develop clientele, does not favor CRC. The record indicates that CRC must cultivate a potential client for a substantial period before the client will do business with CRC for the first time. The record also contains testimony by CRC's president in which he states that the process of developing a client relationship occurs over a long period of time. However, review of the entire record does not support such a conclusion. The extensive time for client development appears to be the direct result of minimal effort by CRC to obtain, develop, or cultivate any particular client. The record is devoid of any specific or tangible evidence supporting a conclusion that CRC engaged in a sustained effort to develop clientele. In fact, the record indicates that no one is specifically employed by CRC to market, sell or cultivate new clients. CRC's president testified that no one is employed by or associated with CRC who is directly responsible for marketing, sales, or even making cold calls on prospective customers and that a tremendous amount of CRC's business is generated by word of mouth.

It should also be noted that the facts of the present case are fundamentally different from the facts in those cases in which this factor was found to favor the existence of a near-permanent relationship. See *Agrimerica*, 199 Ill. App. 3d 435, 557 N.E.2d 357 (where the court upheld a covenant where it took 6 to 12 months to win over a prospective client and persuade him to purchase a product); *McRand*, 138 Ill. App. 3d 1045, 486 N.E.2d 1306 (where the president of a company that designed and coordinated management award programs for large corporations offered uncontradicted testimony that it took one to three years to develop a major account before any business from that client would be forthcoming).

The second objective factor, the amount of money invested to acquire clients, supports CRC's claim. The record reveals that CRC

invested a substantial amount of money to acquire clients. The record is replete with testimony indicating that CRC has invested substantial monies in its 16 studios. The record also indicates that CRC also replaced and upgraded the equipment in each of its studios as necessary and maintained an extensive tape library which contained all of the tapes from every CRC recording session over the past three years.

Defendants cite *LSBZ, Inc. v. Brokis* (1992), 237 Ill. App. 3d 415, 603 N.E.2d 1240, in support of their contention that CRC's investment in building and equipment is dispositive since such expenditures constitute customary overhead incurred by any entity in the audio recording business. Such argument is unpersuasive given that such investment is a minimum prerequisite for acquiring clients and in some cases may be the outcome determinative in persuading a client to work with CRC.

The third factor, the degree of difficulty in acquiring clients, also favors CRC's claim. Defendants assert that the record is devoid of any evidence supporting a conclusion that CRC had difficulty in acquiring clients. Defendants rely on testimony by CRC's president in which he states that a tremendous amount of CRC's business is generated by word of mouth. Defendants argue that this statement supports a conclusion that CRC has no difficulty acquiring clients. This reasoning, however, is not necessarily dispositive where, as in the present case, the record reveals that CRC made a significant financial commitment and investment in providing extensive customer service over a long period of time in anticipation of developing business from its clientele. Here, CRC has demonstrated that there is a sufficient level of difficulty in acquiring clientele in this particular commercial industry.

The fourth factor, the extent of personal customer contact by the employee, favors defendants' claims. Here, the record indicates that Kovach enjoyed close personal contact with the CRC clients and possessed detailed knowledge of their respective needs. The facts of this case are fundamentally different from the facts in those cases in which this factor was found to favor the existence of a near-permanent employer-customer relationship. (See *McRand*, 138 Ill. App. 3d at 1053, 486 N.E.2d at 1312-13; *Agrimerica*, 199 Ill. App. 3d at 445-46, 557 N.E.2d at 366; *Tyler*, 214 Ill. App. 3d at 150, 573 N.E.2d at 866.) In these cases, customers came to the employer for a product or a service offered by the employer through its employee. In *McRand*, it was for business awards, in *Agrimerica*, customers bought animal feed specialty products, and in *Tyler*, clients wanted the employer's lawn care products. The former employees sought to be enjoined in these

cases were little more than sellers of the employer's product and services. Here, CRC has not proved a similar situation. Specifically it has not shown that the clients who use CRC's studios are its customers, rather than the customers of individual sound engineers who service them. The record contains numerous references to the fact that repeat clients specifically request sound engineers by name for subsequent engagements. The record indicates that Kovach is one of the sound engineers who has developed such a following.

The fifth factor, the extent of the employer's knowledge of its clients, does not favor either party's claim. The record indicates that CRC has taken great care to acquire and retain information related to its clients' specific needs and requirements. However, the record also indicates that Kovach possessed special knowledge of such needs and requirements. It should be noted, however, that the present case is significantly different from cases in which the employee's knowledge of customer needs were found to support the employer's claim of a near-permanent relationship with its customers. (*Arpac Corp. v. Murray* (1992), 226 Ill. App. 3d 65, 589 N.E.2d 640; *Millard Maintenance Service Co. v. Bernero* (1990), 207 Ill. App. 3d 736, 566 N.E.2d 379; *McRand*, 138 Ill. App. 3d 1045, 486 N.E.2d 1306.) CRC's relationship with its engineers, and thus with its customers, is more similar to the facts presented in *LSBZ* (237 Ill. App. 3d 415, 603 N.E.2d 1240), where the court found a hair salon's relationship with its hairdressers, and its customers, to be significantly different from the typical employer-employee relationship, which deals with an employer's product rather than an employee's services.

Finally, CRC has not met its burden with regard to the sixth and seventh factors, duration of the customer's association with the employer and the continuity of the employer-customer relationship. The problem lies with CRC's failure to establish that CRC, rather than its engineers, has a proprietary interest in the business of the clients who utilize the studios and engineering talent employed by CRC. CRC's president, Mr. Kubicka, testified that he was unaware of any clients who had been CRC customers for less than three years. However, the record lacks any evidence establishing the duration of the relationship between CRC and any of its 600 clients, other than Kicoff, Axelrod & Associates, BBVS, Burrell Advertising, CME, CMF&Z, D.D.B Needham and Temerlain McClain. The record is also devoid of information regarding the quantity of work performed by CRC for each individual client.

Although the record indicates that CRC has low customer turnover, CRC also fails to distinguish between customers who give a majority of their business to CRC versus a competitor. Nor does CRC of-

fer evidence of a significant amount of business received from any of its customers.

Finally, we must address whether Kovach could have had contact with the customers absent his association with CRC. The record indicates that CRC failed to make a showing that Kovach's only means of access to CRC's customers was through his employment by CRC. CRC concedes that the names, addresses and telephone numbers of its customers are readily obtainable by anyone wishing to contact them. The record reveals that CRC's current clients are listed in various telephone and industry directories. Even assuming that Kovach would not have had contact with his customers but for his employment by CRC, CRC has failed to raise a fair question as to its claim of a near-permanent relationship with its customers.

In conclusion, CRC failed to establish that a near-permanent relationship exists between itself and its clientele under the seven-part test, and, therefore, CRC does not have a protectable interest. As such, in the present case, the trial court's decision to deny CRC's motion for a preliminary injunction was within its sound discretion and not against the manifest weight of the evidence.

■ CRC next asserts that the trial court erred in granting Swell Pictures, Inc.'s verified motion to disqualify plaintiff's counsel. CRC's contention is without merit.

Under Illinois law an order disqualifying an attorney is not a final and appealable interlocutory order. (*Almon v. American Carloading Corp.* (1942), 380 Ill. 524, 42 N.E.2d 78; *National Wrecking Co. v. Midwest Terminal Corp.* (1987), 164 Ill. App. 3d 621, 518 N.E.2d 193; *Chicago Title & Trust Co. v. Guaranty Bank & Trust Co.* (1978), 59 Ill. App. 3d 362, 375 N.E.2d 522.) The validity of this rule was recently affirmed by the supreme court in *In re Estate of French* (1995), 166 Ill. 2d 95, 651 N.E.2d 1125.

For the aforementioned reasons, the decision of the trial court is affirmed.

Affirmed.

CAMPBELL, P.J., and BUCKLEY, J., concur.