165 F.3d 32
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
LOEWEN GROUP INTERNATIONAL, INCORPORATED,
Plaintiff-Appellant, Cross-Appellee,
v.
William J. HABERICHTER, Defendant-Appellee. Cross-Appellant.
 Nos. 97-3825, 97-3877.
 United States Court of Appeals, Seventh Circuit.
 Argued Sept. 15, 1998.
Decided Nov. 9, 1998.
Rehearing Denied Dec. 16, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 93 C 7377. Joan B. Gottschall, Judge.
 Before Hon. WILLIAM J. BAUER, Hon. DANIEL A. MANION, Hon. MICHAEL S. KANNE, Circuit Judges.
 
 ORDER
 
 1
 Loewen Group International, Incorporated obtained a preliminary injunction prohibiting its former employee, William J. Haberichter, from operating a competing funeral home within five miles of its funeral homes' locations. Both Haberichter and Loewen appeal, arguing respectively that the injunction is too broad and too narrow. For the reasons that follow, we affirm in part, reverse in part, and remand.
 
 I. Background
 
 2
 Loewen Group International, Incorporated owns and operates funeral homes and cemeteries throughout the United States. In 1992, Loewen purchased a funeral home business from Donovan and Schaer Funeral Homes, P.C. ("D & S Funeral Homes"). D & S Funeral Homes had two locations about four miles apart, one in Des Plaines, Illinois, and the other in Arlington Heights, Illinois. Loewen also purchased the Donovan and Schaer Funeral Insurance Agency, Ltd., which provided pre-need funeral contracts. (Pre-need funeral contracts involve the planning and payment for funeral services by an individual or family before the time of death.)
 
 
 3
 At the time that Loewen purchased D & S Funeral Homes and D & S Funeral Insurance Agency, William Haberichter worked as an assistant manager at the Arlington Heights funeral home location. As part of the purchase agreement, Loewen agreed to offer employment to certain former employees, including Haberichter, provided that the employees enter into non-compete agreements. Haberichter accepted Loewen's offer of employment and agreed to work as an assistant manager for five years at an annual salary of $52,000. Haberichter received an additional $75,000 in exchange for his agreement to refrain from competing with Loewen within a ten-mile radius for a period of ten years from the date of the purchase agreement, or for three years following the date his employment with Loewen terminated, which ever was earlier.
 
 
 4
 In early November 1993, Loewen learned that Haberichter was establishing a competing funeral home business in Rollings Meadows, Illinois, which he eventually opened in October 1995. Rolling Meadows is located 7.5 miles from Loewen's Des Plaines funeral home and three miles from its Arlington Heights location. Loewen immediately fired Haberichter, and then sued him in federal court for, among other things, breach of contract. Haberichter moved to dismiss Loewen's complaint, arguing that the claims were barred by section 301 of the Labor Management Relations Act ("LMRA") because he was a party to a collective bargaining agreement which preempted his individual contract with Loewen. The district court accepted Haberichter's argument and granted him summary judgment. Loewen appealed to this court. We held that the LMRA did not preempt Loewen's suit, and we reversed and remanded for further proceedings. Loewen Group Int'l., Inc. v. Haberichter, 65 F.3d 1417, 1427 (7th Cir.1995).
 
 
 5
 On remand, Loewen moved for a preliminary injunction restraining Haberichter from competing within ten miles of its Des Plaines and Arlington Heights facilities. The district court referred the matter to a magistrate judge who, after making findings of fact, recommended that the district court grant Loewen a preliminary injunction for three years from the date of the injunction, but enjoining Haberichter only from providing funeral services to "pre-need customers" and immediate family members of individuals listed in Loewen's Record of Funeral files, and then only to those who lived within ten miles of (only) the Des Plaines funeral home location. The district court adopted the magistrate judge's findings of fact, but concluded that the ten-mile scope was too broad. Rather, the district court ruled that Haberichter could not compete within five miles, although it determined that the five-mile radius ran from both Loewen's Des Plaines and Arlington Heights funeral home locations (thus forming an overlapping restricted area that resembled a figure-eight). The district court also held that Haberichter could not serve anyone within five miles of those facilities-not just pre-need customers and those who were immediate family members to those listed in Loewen's Record of Funeral files. The district court further concluded that Haberichter would be enjoined from competing with Loewen for only thirteen months-and not the three years set forth in the employment contract-because Haberichter did not open the Rolling Meadows Funeral Home until twenty-three months after Loewen fired him.
 
 
 6
 After the district court entered a minute order granting Loewen injunctive relief, but before it issued its opinion and injunction detailing the relief, Loewen moved pursuant to Federal Rule of Civil Procedure 65(a)(2) to consolidate its request for preliminary relief with its action on the merits. The district court denied this request because Loewen had not moved for consolidation until after all briefing and argument regarding the preliminary injunction had ended, thus leaving Haberichter without notice that Loewen was seeking a permanent injunction.
 
 
 7
 Both Loewen and Haberichter appeal. Loewen contends that the district court erred in refusing to grant it permanent relief pursuant to Rule 65(a)(2). Loewen also argues that the district court erred in limiting the injunction to thirteen months and five miles. Conversely, Haberichter argues that the district court erred in enjoining him from competing within 5 miles of either the Des Plaines or the Arlington Heights locations; Haberichter asserts that only a 2.75-mile radius is reasonable and that the radius should run only from the Des Plaines location, and then that the injunction should prevent him only from serving pre-need clients or clients who are immediately family members of previous clients.
 
 II. Analysis
 A. Rule 65(a)(2) Motion
 
 8
 Initially (because it mandates our standard of review), we must determine whether the district court erred in denying Loewen's Rule 65(a)(2) motion. Rule 65(a)(2) provides: "Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application." On September 30, 1997, the district court entered a minute order stating that Loewen's "request for an injunction is granted." The order requested that Loewen present a "draft injunction order" at a status conference set for October 21, 1997. On October 10, 1997, Loewen moved pursuant to Rule 65(a)(2) to consolidate a hearing on the merits and to enter a permanent injunction. The district court denied this motion, concluding that neither the court nor the defendant had notice that the parties sought or even contemplated a final injunctive order.
 
 
 9
 While "Rule 65(a)(2) allows a judge to consolidate the hearing of a motion for a preliminary injunction with the trial on the merits, ... he may do this only if the parties consent or if they receive timely notice allowing them to gather and present all the evidence that would be pertinent at a trial on the merits." Proimos v. Fair Auto. Repair, Inc., 808 F.2d 1273, 1277-78 (7th Cir.1987). In this case, Loewen did not move for consolidation until after the district court had entered a minute order granting it preliminary relief. While prior to this motion the parties had completed extensive discovery and had presented extensive legal arguments, this was done under the belief that Loewen sought only a preliminary injunction. Thus, as the district court found, it would be unfair to consolidate the motion at this late date. Under these circumstances, the district court did not abuse its discretion in refusing to convert the preliminary injunction into a permanent one.
 
 B. Preliminary Injunction
 
 10
 The question remains then whether the district court erred in granting Loewen preliminary relief.
 
 
 11
 When considering a motion for a preliminary injunction, a district court must weigh a number of factors. First, it must determine whether the moving party has demonstrated 1) some likelihood of prevailing on the merits, and 2) an inadequate remedy at law and irreparable harm if the injunction does not issue. If the party has done so, the court must next consider 3) the irreparable harm the nonmovant will suffer if the injunction is granted balanced against the irreparable harm to the movant if relief is denied, and 4) the effect granting or denying the injunction will have on nonparties (the "public interest").
 
 
 12
 Meridian Mutual Ins. Co. v. Meridian Insurance Group, Inc., 128 F.3d 1111, 1114 (7th Cir.1997). After weighing these factors, the district court concluded that Loewen was entitled to a preliminary injunction, although only barring competition within five miles of Des Plaines and Arlington Heights, and only for thirteen months. We review the "court's findings of fact for clear error, its balancing of factors for an abuse of discretion, and its legal conclusions de novo." Id.
 
 
 13
 On appeal, the only arguments the parties present concern the district court's interpretation and application of the covenant not to compete. This really represents a challenge to the district court's assessment of Loewen's likelihood of success. Because those are the only arguments presented on appeal, we need not review the district court's weighing of the other factors a district court must weight in considering a motion for a preliminary injunction.
 
 
 14
 The first issue presented is whether Haberichter's covenant not to compete was ancillary to the sale of a business or ancillary to an employment agreement. Illinois law (which the parties agree applies) distinguishes between the two: A covenant ancillary to the sale of a business is enforceable if it is reasonable in duration and in geographical scope. Hamer Holding Group, Inc. v. Elmore, 202 Ill.App.3d 994, 148 Ill.Dec. 310, 560 N.E.2d 907, 915 (Ill.App.1990). A covenant ancillary to an employment agreement must meet a higher standard. It is enforceable only if the employer demonstrates that in addition to the reasonableness of the duration and the scope, either (1) that a near-permanent relationship existed between the employer and its customers that but for his association with the employer, the former employee would not have had contact with the customers; or (2) that there exists and the employee has access to and attempts to use customer lists or other confidential information vital to the business. Audio Prop. Inc. v. Kovach, 275 Ill.App.3d 145, 211 Ill.Dec. 651, 655 N.E.2d 1034, 1037 (Ill.App.1995).
 
 
 15
 To determine whether a covenant not to compete is ancillary to the sale of a business or an employment agreement, Illinois courts consider several factors, including "whether the covenant was a condition precedent to a sale, whether the covenant was incorporated into the sale agreement, and the time the parties signed the covenant in relation to the time they signed the sale agreement." Business Rec. Corp. v. Lueth, 981 F.2d 957, 960 (7th Cir.1992) (internal citations omitted). The district court considered these factors and concluded that Haberichter's covenant was more properly classified as ancillary to an employment agreement, thus requiring the stricter standard. We agree.
 
 
 16
 First, Haberichter's covenant not to compete was not a condition to the sale of D & S Funeral Homes to Loewen-whether or not Haberichter entered into such an agreement with Loewen had absolutely no bearing on Loewen's agreement to purchase D & S Funeral Homes. In fact, Haberichter was not at all involved in the negotiation and sale entered into by D & S and Loewen. And Loewen's purchase of D & S Funeral Homes closed on February 12, 1992, despite the fact that Loewen had not yet received an executed employment contract from Haberichter, also confirming that the covenant was not a condition to the sales agreement. Moreover, while the sales agreement between Loewen and D & S Funeral Homes required Loewen to offer employment to certain individuals if they entered into a covenant not to compete, the sales agreement did not incorporate Haberichter's covenant not to compete; rather that covenant appeared only in Haberichter's independent employment agreement. Based on these facts we conclude that the district court did not err in determining that Haberichter's covenant not to compete was ancillary to an employment contract.
 
 
 17
 Because the district court properly found that the covenant not to compete was ancillary to an employment contract, to be enforceable Loewen must establish that it had a near-permanent relationship with its customers and that but for Haberichter's association with Loewen, Haberichter would not have had contact with the customers.[1] Kovach, 211 Ill.Dec. 651, 655 N.E.2d at 1037. In determining whether a near-permanent relationship existed between an employer and its customers, a court considers:
 
 
 18
 (1) the number of years the employer required to develop the clientele, (2) the amount of money the employer invested in developing the clientele, (3) the degree of difficulty in developing the clientele, (4) the amount of personal customer contact by the employer, (5) the extent of the employer's knowledge of its clientele, (6) the length of time the customers have been associated with the employer, and (7) the continuity of the employer-customer relationship.
 
 
 19
 A.B. Dick Co. v. American Pro-Tech, 159 Ill.App.3d 786, 112 Ill.Dec. 649, 514 N.E.2d 45, 49 (Ill.App.1987).
 
 
 20
 The district court found that a near-permanent relationship existed between Loewen and its customer base, relying on: unrefuted expert testimony that the most important fact considered by a family in choosing a funeral home is prior experience with the home; evidence that families tend to use funeral homes for long periods of time, sometimes for generations; that Loewen has an extensive knowledge of its customers' needs and preferences through the upkeep of detailed Records of Funeral files; that Loewen invested a good deal of time and money to attract customers; and that through its employees, Loewen established longstanding ties in the community through ongoing involvement in civic, religious and charitable organizations. These findings of fact are not clearly erroneous, nor is the district court's conclusion that Loewen had a "near-permanent" relationship with its customers.
 
 
 21
 On appeal, Haberichter does not take issue with the district court's conclusion that Loewen had a near-permanent relationship with its customers. Instead, he argues that the covenant can be enforced only against the specific individuals with whom Loewen can establish such a relationship, not just anyone located within the geographical scope of the covenant. According to Haberichter, here that would include only individuals who had purchased pre-need contracts, or immediate family members of those listed in Loewen's Records of Funeral files.
 
 
 22
 Besides being unworkable, Haberichter's approach is contrary to Illinois law. Under Illinois law, a covenant not to compete which is ancillary to an employment contract is enforceable if a near-permanent relationship exists with its customers and the scope and length of the covenant is reasonable. Obviously customers of a funeral home would include the deceased for a one-time memorable service. But as the district court found, the customer base is family-oriented, and past experience with the home by family members is most important. Neighborhood and community ties create an additional bond that solidifies recognition and confidence with the people living in that community. The employer need not prove a near-permanent relationship exists with every potential customer, or show that the customer relationship is perpetual or indissoluble; rather if overall such a relationship with people in the area exists, then the covenant is enforceable within the (reasonable) geographical scope contained in the contract. LSBZ Inc. v. Brokis, 237 Ill.App.3d 415, 177 Ill.Dec. 866, 603 N.E.2d 1240, 1248 (Ill.App.1992). Moreover, adopting Haberichter's approach would mean that all geographically-based covenants not to compete would be unenforceable; only covenants restricting competition with specific individuals would be enforced. That is not Illinois law. Accordingly, we reject Haberichter's position and conclude that since Loewen established a near-permanent relationship with its customers, the covenant not to compete is enforceable-if its terms are reasonable.
 
 
 23
 In the covenant not to compete, Haberichter agreed not to compete (as defined by the contract) for three years "within a 10-mile radius of the present location of Chapel." Before considering the reasonableness of these terms, we must determine the meaning of "Chapel." The employment agreement defined "Chapel" as "a funeral home business located at Des Plaines, Illinois" which Loewen "has agreed to acquire." Because this definition stated that the "business" was located "at Des Plaines," Haberichter asserts that the ten-mile radius (which he also contends is too broad) runs only from Loewen's funeral home located in Des Plaines-not the Arlington Height location. This, according to Haberichter, is unambiguous. The district court disagreed, instead interpreting "Chapel" to mean both Loewen's Des Plaines and Arlington Heights facilities.
 
 
 24
 We review this question of contract interpretation de novo. Our review leads us to the same conclusion as that reached by the district court. As the district court recognized, the contract defined "Chapel" as the business which Loewen "agreed to acquire," and Loewen agreed to acquire the entire D & S Funeral Homes business, which included both the funeral home located in Des Plaines and the one located in Arlington Heights. While the business included two facilities, the Des Plaines location served as a main office for D & S Funeral Homes; funeral records and the books for both locations were kept at the Des Plaines office. This explains why the contract specified the location of the "business" as Des Plaines, Illinois. But because "business" was defined as the business Loewen "agreed to acquire," and because that business included both funeral homes, the district court properly interpreted the contract's ten-mile geographical scope as running from both Des Plaines and Arlington Heights.
 
 
 25
 Other aspects of the contract and the undisputed facts confirm this interpretation. For instance, paragraph one of the employment contract provides that Loewen "agrees to employ Assistant Manager [Haberichter] and Assistant Manager agrees to accept employment as the Assistant Manager of Chapel." It continued: Haberichter will "devote the whole of his working time to the management of Chapel performing all such acts as are properly belonging to the duties of an assistant manager." Before and after executing this contract, Haberichter spent his entire career with Donovan & Schaer and the Loewen Group at the funeral home facility in Arlington Heights; he never worked at the Des Plaines facility. Therefore, it is very unlikely that the parties intended "Chapel" to mean only the Des Plaines facility. This, coupled with the above facts, leads us to conclude that based on the present record the district court did not err in interpreting "Chapel" to mean the Loewen funeral home business as a whole, including both the Arlington Heights and the Des Plaines facilities.
 
 
 26
 After interpreting "Chapel" as both the Arlington Heights and the Des Plaines locations, the district court "determine[d] that the geographic limitation of ten miles is too broad." It held instead that "it is reasonable to enforce only a five (5) mile restriction from each facility." The district court reasoned that only a five-mile radius would be reasonable because the majority of Loewen's business came from within five miles.
 
 
 27
 Both Loewen and Haberichter appeal this conclusion. Loewen argues that the ten-mile radius is reasonable, while Haberichter contends that only a 2.75-mile radius is appropriate. Whether a covenant not to compete is reasonable is a question of law which we review de novo. Hamer Holding Group, Inc. v. Elmore, 244 Ill.App.3d 1069, 184 Ill.Dec. 598, 613 N.E.2d 1190, 1198 (Ill.App.1993). Because this is a question of state law, we must predict how the Illinois Supreme Court would answer it, and to the extent there is no Illinois Supreme Court precedent, we may rely on lower court decisions. Rodman Ind., Inc. v. G & S Mill, Inc. 145, F.3d 940, 942-43 (7th Cir.1998).
 
 
 28
 Our review of Illinois law leads us to conclude that a ten-mile radius in this case is reasonable. Under Illinois law, "[o]ne of the factors that courts generally consider in making this determination is whether the restricted geographical area is coextensive with the employer's business territory." Midwest Television, Inc. v. Oloffson, 298 Ill.App.3d 548, 232 Ill.Dec. 783, 699 N.E.2d 230, 235 (Ill.App.1998). In this case, the district court found that approximately 17% to 20% of the families served by Loewen reside between five and fifteen miles of the Des Plaines and Arlington Heights facilities. Because a substantial portion (one-fifth) of Loewen's business was located between five and fifteen miles, even fifteen miles is arguably reasonable. But because the parties agreed on a more narrow area (ten miles), that is all Loewen can contractually claim, but it is entitled to that. In short, because Loewen has presented evidence that its business territory extends even beyond ten miles, a ten-mile geographical area is a territory co-extensive with Loewen's business territory, and as a matter of Illinois law is reasonable.
 
 
 29
 The district court reasoning to the contrary doesn't hold up. The district court limited the geographical scope because a majority of Loewen's business came from within five miles of the funeral home's two locations. But Illinois law does not limit the reasonableness of a geographical scope to the range from where a majority of the business derives; rather, it allows a restriction to be coextensive with the entire business territory. Illinois decisions illustrate this point. For instance, in Midwest Television, 298 Ill.App.3d 548, 232 Ill.Dec. 783, 699 N.E.2d 230, the Illinois Appellate Court held that a 100-mile geographical restriction in a disk jockey's employment contract was reasonable where the evidence showed that the former employer's station generally has a broadcast range reaching up to ninety miles and where the station manager testified that a radio station with a somewhat stronger signal located near the edge of this zone could compete for listeners and advertisers. Id. at 235. And it is important to note that the 10-mile radius only limits the location of the base from which Haberichter can operate. From that location outside the restricted perimeter he would be free to attract and solicit business from within, thus making the restriction less exclusive.
 
 
 30
 Finally, Loewen asserts that the district court erred in limiting the injunction to thirteen months, arguing that it was entitled to a three-year injunction. Haberichter's employment contract with Loewen provided that he would not engage in specified activities until "the earlier of ten years from the date of the Closing of the related business purchase agreement, ... or three years immediately following the date of termination of employment of or by Assistant Manager, ..." Because Loewen terminated Haberichter on November 9, 1993, under the terms of the contract Haberichter could not compete (as defined by the contract) until November 9, 1996. Because that date has passed, it may seem that this case is moot. However, courts have recognized that where an employee violates a covenant not to compete, the time period may be extended beyond that specified in the contract. See JAK Prod. Inc. v. Wiza, 986 F.2d 1080, 1090 (7th Cir.1993) ("because the [defendant] violated the covenant not to compete from November 25, 1991 until the injunction, and the covenant requires [defendant] to refrain from such competition for a period of one year, the district court did not err in determining the period of one year as March 11, 1992 to March 11, 1993. To hold otherwise would reduce the covenant from twelve to eight months, ..."). See also, Overholt Crop Insurance Service Co. v. Travis, 941 F.2d 1361, 1372 (8th Cir.1991) (holding that the district court did not err by extending the injunction beyond the life of the restrictive covenant). Based on this precedent, the district court extended the covenant for an additional 13 months. Loewen argues that the district court should have enjoined Haberichter for the entire three years, and that in refusing to do so it erred in interpreting the covenant not to compete.
 
 
 31
 Specifically, Loewen claims that the district court erred when it refused "to read the covenant to bar Haberichter from planning and physically constructing, but not operating, the new funeral home and therefore find[ing] that he was not in violation of the covenant prior to the opening of the Rolling Meadows business." Loewen had presented evidence that between November 1992 and the summer of 1993, Haberichter negotiated the purchase of a lot on which to build his funeral home; that in February 1993, he entered into an agreement with a construction company for the design and building of a funeral home; that he commenced construction on the competing funeral home; and that in the summer of 1996, Haberichter began working for Middleton Mortuary, which is located within ten miles of the Des Plaines location and one mile of the Arlington Heights location. Loewen contends that this conduct also violated the covenant not to compete, which prohibited Haberichter from:
 
 
 32
 Directly or indirectly, for his own account, or as a partner, member, employee, advisor or agent, of any partnership or joint venture, or as a trustee, officer, director, shareholder, employee, advisor or agent of any corporation, trust or other business ... own, manage, join, participate in, encourage, support, finance, be engaged in, have an interest in, give financial assistance or advice to, permit his name to be used in connection with or be concerned in any way in the ownership, management, operation or control of, or be connected in any manner with any business which is or may be in the funeral, mortuary, crematory, burial or, funeral insurance business, ...
 
 
 33
 It is unclear whether this language is broad enough to cover the planning activities in which Haberichter engaged before opening the doors of his competing business. It comes down to what "any business" means. If that means a business "in business," then Loewen loses. However, if "any business" is modified by "may be in the funeral ... business" such that the "business" need not currently be operating, Loewen's interpretation is correct. Also unclear is whether Haberichter's work with the competing mortuary violated the covenant. On the current preliminary injunction record, we cannot make these determinations, but even if we could that does not mean that Loewen, as a matter of law, is entitled to a three-year injunction. While the parties did not brief the issue, the cases the district court cites in support of extending the covenant not to compete for an additional 13 months indicate that it is within the court's equitable powers to determine the length of such an extension. We have found no case law holding that the extension is automatic. Therefore, at this stage, we must affirm the district court's preliminary determination. However, on remand the court should reconsider the issue in light of any additional evidence and in light of the breadth of the covenant not to compete.
 
 III. Conclusion
 
 34
 The district court did not abuse its discretion when it denied Loewen's Rule 65(a)(2) motion to consolidate its motion for a preliminary injunction with a hearing on the merits. The district court also did not err in interpreting "Chapel" to mean the Loewen business as a whole, and thus the covenant not to compete extended from both the Des Plaines and the Arlington Heights locations. The district court, however, erred in holding that as a matter of Illinois law, a ten-mile radius was too broad, although it properly concluded that the covenant applied to all individuals within the geographical scope and not just those specific individuals with whom Loewen could establish a near-permanent relationship. Finally, while we do not hold that Loewen was entitled to a three-year injunction, we do note that the district court should reconsider this issue on remand in light of the breadth of the covenant not to compete and any additional evidence. For these and the foregoing reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this order.
 
 
 
 [1]
 Loewen does not argue that Haberichter acquired or attempted to use confidential information, so we need not consider that alternative basis for enforcing the covenant